TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00161-CV






John Eric Doyle, Appellant




v.




Tamera Lynn Nunn Doyle, Appellee







FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368TH JUDICIAL

DISTRICT

NO. 95-1227-F368, HONORABLE BURT CARNES, JUDGE PRESIDING 






 Justin Doyle's divorcing parents could not agree on conservatorship arrangements for him. 
After a trial to the court, the trial judge named Tamera Doyle sole managing conservator and John Doyle
possessory conservator. John contends that the trial court should have appointed him and Tamera joint
managing conservators because the presumption in favor of joint managing conservatorship was not
rebutted. We will affirm the trial-court judgment.


Background



 After separating, John and Tamera had an informal custody-sharing arrangement that their
young son Justin would alternate living four months with Tamera in Texas and four months with John in
Florida. However, after the divorce litigation began, the cooperative relationship between the parents
deteriorated. Furthermore, Justin turned five and needed to enroll in elementary school in one location. 
After a Florida court found it did not have jurisdiction over the divorce, this cause was tried in Williamson
County. Mediation failed, and the trial court had to decide the issue of conservatorship for Justin.

 We review the trial court's determination of conservatorship under an abuse of discretion
standard. Gillespie v. Gillespie, 644 S.W.2d 449, 451 (Tex. 1982); MacCallum v. MacCallum, 801
S.W.2d 579, 582 (Tex. App.--Corpus Christi 1990, writ denied). A trial court abuses its discretion when
it acts in an arbitrary and unreasonable manner, or when it acts without reference to any guiding principles. 
Beaumont Bank, N.A. v. Buller, 806 S.W.2d 223, 226 (Tex. 1991); Downer v. Aquamarine
Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985).

 John brings twenty-three points of error challenging the legal and factual sufficiency of
evidentiary findings the court relied on to hold Tamera's appointment as sole managing conservator was
in Justin's best interest. (1) Under an abuse of discretion standard, legal and factual insufficiency are not
independent grounds of error, but are relevant factors in assessing whether the trial court abused its
discretion. Willemon v. Willemon, 930 S.W.2d 290, 293 (Tex. App.--Waco 1996, no writ); Wood v.
O'Donnell, 894 S.W.2d 555, 556 (Tex. App.--Fort Worth 1995, no writ). We will construe the points
together as asserting an abuse of discretion and will 

review the evidence as it is relevant to whether the trial court abused its discretion in finding that the
presumption in favor of joint managing conservatorship was rebutted.


Presumption of Joint Managing Conservatorship


 The court's primary consideration in determining conservatorship and possession is the
best interest of the child. Tex. Fam. Code Ann. § 153.002 (West 1996) (Family Code). The trial court
shall consider the qualifications of the parties without regard to their marital status or to the gender of the
party or the child in determining which party to appoint as sole managing conservator, whether to appoint
joint managing conservators, and the terms and conditions of conservatorship. Family Code § 153.003. 
The trial court may appoint a sole managing conservator or joint managing conservators. Family Code §
153.005(a). In 1995, the Legislature enacted a rebuttable presumption that the appointment of the parents
as joint managing conservators is in the best interest of the child. Family Code §153.131(b). In
determining whether the presumption has been rebutted, we will review the evidence in light of the factors
that the court must consider in weighing the appointment of joint managing conservators. Family Code §
153.134; see Martinez v. Molinar, No. 08-96-00098-CV (Tex. App.--El Paso Aug. 7, 1997, no pet.
h.)

.

Factors Affecting Joint Managing Conservatorship


 There is evidence in the record that the trial court properly considered all of the relevant
factors set forth in section 153.134 before concluding that the presumption in favor of joint managing
conservatorship had been rebutted.

Cooperative Decision-Making Ability

 The succinct statement by the court-ordered psychologist that there had been a "sharp
deterioration" in John and Tamera's ability to cooperate best summarizes the evidence concerning this
factor. Mediation between the parties did not succeed. The court found that John and Tamera had agreed
to file for divorce in Texas, to do so without a contest, to alternate four-month periods of possession until
Justin started school and thereafter to have Justin attend school in Texas. Instead, John filed for divorce
in Florida and served Tamera with those papers while she was still expecting to file suit in Texas. She then
became concerned about returning Justin to John in Florida, in part because some of John's remarks led
her to believe he might be seeking sole possession contrary to their agreement. Her suspicions aroused,
Tamera wanted the protection of temporary court orders before allowing Justin to return to Florida. She
testified to her panic at one point when she was unable to find John, Justin or John's attorney.

 John's mother also began to intercede in the decision-making. At the hearing in Williamson
County on temporary orders, John's mother became very upset and threatened Tamera. There was also
evidence that John and Tamera's ability to reach shared decisions was undermined as each of them formed
primary relationships with new partners. Each expected their new partner to participate in Justin's care and
each expected that their new marriage would serve as Justin's model for his adult relationships.

 Whether through poor communication or fault or the interaction with new partners, the
parents' ability to cooperate deteriorated and the level of suspicion and hostility evident at the time of trial
cast doubt on their ability to participate effectively in a joint conservatorship arrangement. In its conclusions
of law, the trial-court explicitly found the history of the parties and their recent patterns of interaction
negated the presumption in favor of joint managing conservatorship.


Benefits to Child


 There is evidence that Justin's general psychological and emotional condition had begun
to worsen under the back-and-forth arrangement. The parties changed their four-month rotation to six
months on John's suggestion that longer periods of possession would ameliorate certain discipline problems
Justin was manifesting. The court-appointed psychologist expressed concern over behavioral changes upon
Justin's transition from one home to the other. After one transition from Florida to Texas, Justin's
preschool teachers raised concerns about his physical and verbal aggression at school and Tamera reported
an increase in "oppositional behavior" at home.

 Justin's problems in accommodating shared living arrangements have increased as he has
grown older and as the cooperative relationship between his parents has declined. The evidence supports
the court's conclusion that Justin would not presently benefit from a continued joint managing
conservatorship, whatever the earlier success of such arrangements.


Geographical Proximity


 The proximity of the parents' residences is an important factor to consider in evaluating joint
living arrangements for a child. At oral argument, counsel for appellant stated that John was more
interested in joint decision making than in shared possession. However, much of the evidence at trial
addressed a joint possessory arrangement. Tamera grew up in Georgetown; her parents still live there. 
John grew up in Louisiana; his parents live there. John testified that he had no family in Florida. Tamera
entered the military after high school and met John, who was in the National Guard, at a language school. 
When she was stationed in Florida, he followed. They had discussed returning to either Texas or Louisiana
after their military service. Neither one contemplated raising their child in Florida, far from family and
friends.

 John's arrangements for Justin's daily care involved accommodating his training obligations;
his plans for Justin, should John be called for active duty, may have concerned the court. During one two-week training period, John left Justin with a woman who was then living with him; he testified that he now
plans to leave Justin with another woman who is his current fiancee. The psychologist testified that he had
not evaluated either parent's live-in partner. The possibility exists that Justin could be left for extended
periods in the care of a non-parent whom the court has not evaluated.

 The geographic distance between the parents weighs against a joint living arrangement. 
It also makes joint decision making impractical. For example, how is John, at such a distance, to evaluate
schools, after-school activities, health-care providers or the myriad of daily decisions that must be made? 
The court did not abuse its discretion in considering that geographic distance weighed against a joint
managing conservatorship under these circumstances.


Ability to Promote Positive Relationship with Other Parent


 Tamera and John each say they want Justin to have a strong relationship with the other
parent. The parties each testified they will comply with court-ordered visitation and not disparage the other
parent to Justin. This willingness to promote the other parent's relationship with Justin did not negate the
other evidence that mistrust and suspicion had undermined the kind of cooperation that might make joint
decision making feasible at such long distance.


Prior Child-Rearing Participation

 Although Tamera initially resigned from the military to be Justin's primary caregiver for the
first eighteen months of his life, there is evidence that both parents have participated in his care since their
separation. This factor supports John's sincere interest in parenting Justin, but it does not mandate the
conclusion that a joint managing conservatorship is workable under the other circumstances revealed at
trial.


Other Factors


 At the time of the trial, John's fiancee lived with him and Tamera was living with a man she
has since married. The court could have considered the evidence that these new relationships complicated
the parties' earlier success with joint decision making and joint living arrangements for Justin. Finally, the
court is not directed to consider the preference of a child of Justin's age.


Conclusion


 Even though the Family Code created a presumption that the appointment of joint managing
conservators is in a child's best interest where feasible, the matter of determining whether that presumption
has been rebutted is addressed to the sound discretion of the trial judge as the trier of fact. See Martinez,
slip op. at 7. After observing the parties and their witnesses, their demeanor and the validity of their claims,
the trial court found that the presumption favoring joint managing conservatorship had been rebutted and
that the appointment of Tamera Doyle as sole managing conservator was in this child's best interest. In
custody matters, where personal observation and evaluation of the parties and their claims is so valuable,
we give great deference to the trial court's judgment. We will set aside that judgment only if the trial court
acted without reference to any guiding rules or principles.

 The trial court properly addressed the statutory factors to be considered in appointing joint
managing conservators before determining that the presumption favoring joint managing conservators had
been rebutted. See Family Code § 153.134. The evidence supports the trial judge's conclusion that
because of the parents' geographic distance and their deteriorating ability to cooperate, Tamera's
appointment as sole managing conservator better served the child's interest than the appointment of joint
managing conservators. We cannot say that the trial judge abused his discretion. We overrule all of
appellant's points of error and affirm the trial court's judgment.



 

 Bea Ann Smith, Justice

Before Justices Powers, Aboussie and B. A. Smith

Affirmed

Filed: November 6, 1997

Publish
1. At oral argument, John's counsel waived points twenty, twenty-one and twenty-two challenging the
visitation provisions in the final order.


 John's arrangements for Justin's daily care involved accommodating his training obligations;
his plans for Justin, should John be called for active duty, may have concerned the court. During one two-week training period, John left Justin with a woman who was then living with him; he testified that he now
plans to leave Justin with another woman who is his current fiancee. The psychologist testified that he had
not evaluated either parent's live-in partner. The possibility exists that Justin could be left for extended
periods in the care of a non-parent whom the court has not evaluated.

 The geographic distance between the parents weighs against a joint living arrangement. 
It also makes joint decision making impractical. For example, how is John, at such a distance, to evaluate
schools, after-school activities, health-care providers or the myriad of daily decisions that must be made? 
The court did not abuse its discretion in considering that geographic distance weighed against a joint
managing conservatorship under these circumstances.


Ability to Promote Positive Relationship with Other Parent


 Tamera and John each say they want Justin to have a strong relationship with the other
parent. The parties each testified they will comply with court-ordered visitation and not disparage the other
parent to Justin. This willingness to promote the other parent's relationship with Justin did not negate the
other evidence that mistrust and suspicion had undermined the kind of cooperation that might make joint
decision making feasible at such long distance.


Prior Child-Rearing Participation

 Although Tamera initially resigned from the military to be Justin's primary caregiver for the
first eighteen months of his life, there is evidence that both parents have participated in his care since their
separation. This factor supports John's sincere interest in parenting Justin, but it does not mandate the
conclusion that a joint managing conservatorship is workable under the other circumstances revealed at
trial.


Other Factors


 At the time of the trial, John's fiancee lived with him and Tamera was living with a man she
has since married. The court could have considered the evidence that these new relationships complicated
the parties' earlier success with joint decision making and joint living arrangements for Justin. Finally, the
court is not directed to consider the preference of a child of Justin's age.


Conclusion


 Even though the Family Code created a presumption that the appointment of joint managing
conservators is in a child's best interest where feasible, the matter of determining whether that presumption
has been rebutted is addressed to the sound discretion of the trial judge as the trier of fact. See Martinez,
slip op. at 7. After observing the parties and their witnesses, their demeanor and the validity of their claims,
the trial court found that the presumption favoring joint managing conservatorship had been rebutted and
that the appointment of Tamera Doyle as sole managing conservator was in this child's best interest. In
custody matters, where personal observation and evaluation of the parties and their claims is so valuable,
we give great deference to the trial court's judgment. We will set aside that judgment only if the trial court
acted without reference to any guiding rules or principles.

 The trial court properly addressed the statutory factors to be considered in appointing joint
managing conservators before determining that the presumption favoring joint managing conservators had
been rebutted. See Family Code § 153.134. The evidence supports the trial judge's conclusion that
because of the parents' geographic distance and their deteriorating ability to cooperate, Tamera's
appointment as sole managing conservator better served the child's interest than the appointment of joint
managing conservators. We cannot say that the trial judge abused his discretion. We overrule all of
appellant's points of error and affirm the trial court's judgment.



 

 Bea Ann Smith, Justice

Before Justices Powers, Aboussie and B. A. Smith

Affirmed

Filed: November 6, 1997

Publish
1. At oral argument, John's counsel waived points twenty, twenty-one and twenty-two challenging the
visitation provisions in the final order.