NUMBER
13-09-00646-CV

COURT
OF APPEALS

THIRTEENTH
DISTRICT OF TEXAS

CORPUS
CHRISTI – EDINBURG                                        



IN THE INTEREST OF
S.W., A CHILD

 



                           On appeal from
the 444th District Court

of Cameron County,
Texas.

 



 

MEMORANDUM OPINION 

 








Before Chief Justice
Valdez and Justices Rodriguez and Wittig[1]

 

                James
Werbiski, appellant, challenges the trial court’s grant of grandparent’s
visitation rights to Milena Perea, appellee.  In three issues, Werbiski
contends the trial court abused its discretion by allowing possession and
access to Perea because: (1) Perea did not over-come the presumption that a
parent acts in the best interest of the child; (2) there was no evidence that a
parent of the child had been found to be incompetent; and (3) lack of
sufficient evidence that E.O., the mother, did not have actual possession or
access to the child.

                                                            I.  Background

            Appellee,
Perea, is the grandmother of the child S.W., and the mother of E.O.  Werbiski
was the common law husband of E.O.  E.O. was hospitalized October 17, 2008,
after being unable to drive a vehicle and becoming disorientated.  She suffered
an aneurysm or stroke.  After nearly three months in the hospital, E.O. was
transferred to Ebony Lake Nursing Home and thereafter to Medford Assisted
Living Nursing Home.  At the time of trial, E.O. was not able to walk, her
right arm was paralyzed, and most of her right side was paralyzed.  She could
not walk, bathe, or change.  She was unable to speak except for a few words,
like “yes” or “no,” or “I don’t know.”  Most of her answers were “I don’t
know.”  Werbiski did not know if E.O. recognized him or not.

            Werbiski
stated he was denied the right to make decisions for E.O. at the hospital.  He
testified that E.O. did not want to live under her conditions but that he was
denied the right to make any decisions for her.  However, Dr. Tina Briones
informed Werbiski that he could make decisions for E.O.

            S.W.
was born May 29, 2007.  She suffers from West Syndrome, a precarious and touchy
illness, according to Werbiski. The disease is a neurological disorder causing
spasms or seizures.  Her condition is addressed by daily medication.

            The
trial court granted Perea limited access and possession to S.W. from 11:00 a.m.
to 4:00 p.m. on Tuesdays and Thursdays of the first and third weeks of each
month.  At these times, Werbiski is at work, and he would otherwise leave S.W.
at a child-care facility.  Perea’s possession and access was limited to Cameron
County and other members of Perea’s family could not be present except for her
spouse and the mother of the child.

                                                            II.  Standard of Review

            We
review a trial court’s order granting grandparent access for an abuse of
discretion.  In re Derzapf, 219 S.W.3d 327, 333 (Tex. 2007) (orig.
proceeding) (per curiam).  A trial court abuses its discretion when it grants
access to a grandparent who fails to meet the statutory requirements.  Id. 
Although the grandparent access statute does not specifically include a best
interest analysis, section 153.002 of the family code dictates that the best
interests of the child shall always be the primary consideration when
determining conservatorship, possession, and access issues.  See Tex. Fam. Code  § 153.002 (West 2008); In
re J.P.C., 261 S.W.3d 334, 335-36 (Tex. App.–Fort Worth 2008, no pet.)  A
trial court is given “wide latitude in determining the best interests of a
minor child.”  Stallworth v. Stallworth, 201 S.W.3d 338, 347 (Tex.
App.–Dallas 2006, no pet.) (quoting Gillespie v. Gillespie, 644 S.W.2d
449, 451 (Tex. 1982)).

            An
abuse of discretion does not occur if some evidence of substantive and
probative character exists to support the trial court’s decision.  J.P.C.,
261 S.W.3d at 336.  However, a trial court has no discretion in determining
what the law is or applying the law to the facts.  Walker v. Packer, 827
S.W.2d 833, 840 (Tex. 1992).  Therefore, discretion is abused when the court
grants access to a grandparent who fails to meet the statutory requirements of
section 153.433.  J.P.C., 261 S.W.3d at 336; see In re B.N.S.,
247 S.W.3d 807, 808 (Tex. App.–Dallas 2008, no pet.).  As the finder of fact
for the proceeding, the trial court is the exclusive judge of the credibility
of the witnesses and the weight to be given their testimony.  Shear Cuts,
Inc. v. Littlejohn, 141 S.W.3d 264, 270-71 (Tex. App.–Fort Worth 2004, no
pet.). 

            The
trial court may order reasonable possession of or access to a grandchild by a
grandparent if:

(1) at the time the
relief is requested, at least one biological or adoptive parent of the child
has not had that parent’s parental rights terminated;

 

(2) the grandparent
requesting possession of or access to the child overcomes the presumption that
a parent acts in the best interest of the parent’s child by proving by a
preponderance of the evidence that denial of possession of or access to the
child would significantly impair the child’s physical health or emotional
well-being; and

 

(3) the grandparent
requesting possession of or access to the child is a parent of a parent of the
child and that parent of the child:

 

(A)  has been
incarcerated in jail or prison during the three-month period preceding the
filing of the petition;

 

(B) has been found by
a court to be incompetent;

 

(C) is dead; or

 

            (D) does
not have actual or court-ordered possession of or access to the child. 

 

Tex.
Fam. Code Ann. § 153.433
(West 2008).

 

            Review
of the legal and factual sufficiency of the evidence in a possession or access
case is subsumed into the abuse of discretion review.  In re Marriage of
Hale, 975 S.W.2d 694, 697 (Tex. App.–Texarkana 1998, no pet.); Doyle v.
Doyle, 955 S.W.2d 478, 479 (Tex. App.–Austin 1997, no pet.).  Accordingly,
legal and factual insufficiency are not independent grounds of error, but are
relevant factors in assessing whether the trial court abused its discretion.  Doyle,
955 S.W.2d at 479.  Where sufficiency review overlaps with the abuse of
discretion standard, the reviewing court engages in a two-pronged inquiry.  Sandone
v. Miller-Sandone, 116 S.W.3d 204, 206 (Tex. App.–El Paso 2003, no pet.). 
First, the court determines whether the trial court had sufficient information
upon which to exercise its discretion. Id.; see also In re W.M.,
172 S.W.3d 718, 725 (Tex. App.–Fort Worth 2005, no pet.).  Second, the
appellate court evaluates whether the trial court erred in applying its
discretion. Sandone, 116 S.W.3d at 206; In re T.D.C., 91 S.W.3d
865, 872 (Tex. App.–Fort Worth 2002, pet. denied).  With regard to the second
question, we determine, based on the evidence, whether the trial court made a
reasonable decision.  W.M., 172 S.W.3d at 725; T.D.C., 91 S.W.3d
at 872.

                                                            III.  Record Evidence

            Perea
testified she was a widow and later remarried.  She stated that her daughter
E.O. was in a “very dire situation.”  E.O. had undergone surgery to replace
bone on her head.  E.O. was incapable of caring for S.W.  Prior to the October
2008 stoke suffered by E.O., Werbiski and E.O. would leave S.W. with Perea on
weekends.  Both of S.W.’s parents entrusted S.W. to her and Werbiski trusted
her “100%.”  Perea testified she took good care of S.W.  After the stroke,
Perea stated she was denied access to S.W. except for a visit in the hospital
with E.O. in December 2008, and five minutes in April 2009, when she visited
her daughter at the nursing home.  Werbiski refused to speak with her and had
his phone number changed. 

            Perea
stated S.W. missed her and that she was the child’s only grandmother.  Because
she was retired, she could spend all of her time with the child.  She could
give the child much love that only a grandmother could.  She told the court:

[E]ventually the little
girl is going to know “‘Why I don’t have a grandma: What is the reason?  Why
grandma doesn’t want me?  What is this?”  This is what I worry for the little
girl.

 

            Perea
stated that there are no court orders regarding the child, that E.O. does not
have actual possession of S.W., and that the child would suffer significant
impairment of her emotional well being if Perea were denied access to S.W. 
S.W.’s mother could not care for her, although Perea stated that no judge had
found her daughter incompetent.  She stated the best interests of the child
would allow her visitation so the child could come to her house and run around
in it.  “She have—we give her so much love.  Mentally it’s just the love that I
want to give her because that’s the only gramma she have, me.”  Perea
introduced a photo showing herself and her granddaughter together before the
stroke.

             Perea
admitted that her son James was verbally abusive and bruised his children, and
that his ex-wife had her parental rights terminated.  Based upon unarticulated
hearsay, Werbiski testified that James’s eleven-year-old boy may have molested
his nine year old sister.  Werbiski indicated he was mainly worried about
James, who may have physically abused his own children.  He requested
supervised visitation and no over-night stays with Perea.

            On
recall, Perea testified she had back problems in the past when she worked six
days a week with her husband at a body shop.  She has since retired and has no
current medical problems, except high blood pressure which is controlled by
medication.  She can lift twenty-six pounds or S.W.  Perea is aware of S.W.’s
medical problems and has medicated her in the past.  She denied Werbiski’s
accusation that she lied about S.W. spending weekends with her prior to E.O.’s
hospitalization.  She recalled one time that Werbiski and her daughter left
S.W. with her for a week.  Addressing the possible available emergency medical
care of S.W., Perea recalled one time she called an ambulance and it was there
in five minutes.

            Werbiski
testified that no one truly knows what E.O. knows and understands and what she
does not.  Brain damage has affected her speech as well as her recall and
memory.  She cannot shower or change.  E.O. is on medicaid and social security.[2]

            Werbiski
testified that when Werbiski and E.O. would offer to take S.W. to see Perea,
Perea would refuse the visit, sometimes complaining of back problems.  Werbiski
did not know if it would benefit S.W. to see her grandmother.  Werbiski
testified that S.W. also has one paternal grandfather.  Werbiski indicated his
phone had been  disconnected and that he was filing for bankruptcy.  Werbiski
admitted that Adult Protective Services had called on him because of E.O. 
Perea initially signed E.O. into the hospital, but Werbiski eventually signed
her into the nursing home.  Werbiski was concerned that E.O.’s wishes for no
heroic intervention be honored, and he called Perea a “liar” in answer to his
attorney’s inquiries suggesting such an answer. 

            On
recall, Werbiski testified that S.W.’s best doctor was in San Antonio.  He
didn’t know the proximity of hospitals to Perea and her husband, but doubted
they were close.

            Daniel
Gomez, a deputy director of County Supervision and Corrections, did no
investigation of the parties or their families.  He opined hypothetically that
S.W. should not be allowed to be with a nine-year-old sexual predator.[3]   Again,
hypothetically, he also opined that it would not be a bad thing for a
grandmother to have access to her grandchild.

            Melissa
Werbiski, the sister of appellant, testified that S.W. sometimes had trouble
with her medication.   The child was once hospitalized for three days because
she could not keep her medication down.  The child could have over one-hundred
seizures in a matter of hours.  Melissa expressed concern whether Perea would
be vigilant about the child’s seizures.  She volunteered to help find
supervisors for visitations with Perea.  Melissa did not know how S.W.’s
child-care facility would deal with the child’s seizures.  She only observed
actual seizures one time.

            In
closing argument, counsel for appellant admitted:  “And there is no question
but that Petitioner wants to be a loving grandmother.  That is not being argued
here.  That’s not being disputed.”

                                                            IV.  Analysis

                                                A.  Parental Presumption

            Werbiski
does not argue that the trial court lacked sufficient information upon which to
exercise its discretion.  See Sandone, 116 S.W.3d at 206. 
Therefore, we address whether the trial court abused its discretion by awarding
grandparent access.

            Werbiski
first argues that Perea did not overcome the presumption that a fit parent acts
in the best interest of his child.  Section 153.433(2) requires that a
grandparent seeking court-ordered access overcome the presumption that a parent
acts in his or her child’s best interest by proving by a preponderance of the
evidence that “denial . . . of access to the child would significantly impair
the child’s physical health or emotional well-being.”  Derzapf, 219
S.W.3d at 333 (citing Tex. Fam. Code
Ann. § 153.433(2)).  A trial court abuses its discretion when it grants
access to a grandparent who has not met this standard because “[a] trial court
has no ‘discretion’ in determining what the law is or applying the law to the
facts[,] even when the law is unsettled.”  Id. (citing In re
Prudential Ins. Co. of Am., 148 S.W.3d 124, 135, (Tex. 2004)).  However, in
Derzapf, grandparent Connie relied upon the testimony of Dr. Otis.  The
supreme court noted:

According to Dr.
Otis, ‘[t]he manner in which she resisted the children transitioning to
[Ricky’s] full-time care interfered with the children’s emotional and
behavioral adjustment.’ He also concluded that Connie actively attempted to
alienate B.G.D. from his father and that her behavior was “very damaging” to
the parent-child relationship.  Moreover, while Dr. Otis noted the children’s
“sadness” at being unable to see their grandparents, he admitted that these
feelings did not rise to the level of a significant emotional impairment.

 

Id. at
333.  Thus, Derzapf is clearly distinguished on the facts.  Here, even
Werbiski’s expert, Gomez, conceded that it was not bad for Perea to have access
to S.W.  The trial court found that prior to her stroke/medical incapacity,
Perea maintained a close relationship with her daughter E.O. and granddaughter
S.W.  Werbiski would entrust his daughter to Perea.  After the stroke, Werbiski
denied Perea access to her granddaughter.  Implicitly, by denying Perea access
to her granddaughter, he was contemporaneously denying S.W.’s access to her
grandmother.  The court further found:

The credible evidence
presented by Petitioner Milena Perea regarding the warm, loving, and very close
bond and relationship that existed between herself, her daughter E.O., and her
granddaughter S.W., prior to E.O.’s stroke and medical incapacity, combined
with the factually unsubstantiated and arbitrary decision by James Werbiski to
deny Petitioner access to her granddaughter, overcame the legal presumption
that a parent acts in the best interest of his/her child.

 

            The
trial court avoided any interference with Werbiski’s possession of S.W. and
noted that Werbiski delivered the child each day to child care at 10:00 a.m.
until 4 p.m., when his sister would pick up S.W.  Werbiski would then not
arrive home from work until 5:00 p.m.  The court found that allowing possession
and access between 11:00 a.m. and 4:00 p.m. for two days out of the first and
third week of each month is in the best interest of the child.  The court went
on to legally conclude that the evidence supported a finding, by a
preponderance of the evidence, that denial of possession of or access to the
child by the maternal grandmother would significantly impair the child’s
physical heath or emotional well-being.  We note that the trial court granted
Werbiski’s request for no overnight visitation.  The trial court’s order also
addressed Werbiski’s stated problems with Perea’s son, James, and his allegedly
troublesome son.  The court denied any participation in access or visitation by
these two individuals, who were not parties to the action.  Only Perea, her
husband, and the child’s mother, could be present during access times.

            From
the evidence adduced, the trial court could have reasonably concluded that
S.W.’s health and emotional well-being would be significantly impaired by
denial of access.  S.W. had previously stayed weekends, and as long as a week
with Perea and her husband.  It appears that the trial court considered this
close relationship in making a decision regarding access.  It was within the
court’s realm of discretion to infer that a permanent break in a close familial
relationship would seriously affect S.W.’s emotional well-being.  Further, the
trial court could have decided that the deprivation of love, care, and
affection from one-half of the child’s family would cause significant
impairment to the child’s emotional well-being.

            After
two days of testimony, the trial court was well aware that Perea was S.W.’s
only living grandmother.  S.W. had only one grandparent on each side of the
family.  On her maternal side, she has a mother who “exists” in a full care
facility in a “very dire situation.”  Thus, Perea is the only fully functioning
member of S.W.’s maternal side of the family.  The trial judge, or any rational
fact-finder, could reasonably determine significant harm to the emotional well
being to a young girl when she is cut off from the mother’s side of the
family.  E.O. was incapable of caring for S.W. and is mentally and physically
impaired.  S.W. missed her only grandmother.  The trial court could also
reasonably infer the child wanted to spend time with her grandmother at her
house, where she could run and play in a loving maternal atmosphere.  The trial
court specifically found that the “unsubstantiated and arbitrary decision” by
Werbiski to deny Perea access overcame the presumption a parent acts in the
best interest of his child.  Cf. Troxel v. Granville, 530 U.S. 57, 68-74
(U.S. 2000) (“Finally, we note that there is no allegation that Granville ever
sought to cut off visitation entirely.  Rather, the present dispute originated
when Granville informed the Troxels that she would prefer to restrict their
visitation with Isabelle and Natalie to one short visit per month and special
holidays.”)

            The
trial court noted before his decision that Perea sought access and yet, at the
same time, Werbiski stated he was not denying access.  However, Werbiski
refused to talk with Perea to reach any accommodation.  Even on at least two
occasions when the trial court invited the parties to discuss some
accommodation, Werbiski refused.  This refusal is consistent with Perea’s
testimony that Werbiski refused to communicate with her about S.W. or allow her
access.

            It
is clear from the trial court’s comments that its focus included the best
interest of the child pursuant to the court’s duty under the family code.  See
Tex. Fam. Code Ann. §
153.002. (“The best interest of the child shall always be the primary
consideration of the court in determining the issues of conservatorship and
possession of and access to the child.”).  We note that the trial court did not
give Perea unlimited or even overnight visitation with S.W.  Rather, it only
allowed Perea to see S.W. on parts of two days, the first and third weeks of
each month, a total of twenty hours per month.   During these hours, Werbiski
is not in possession of the child and would otherwise leave S.W. at
child-care.  Further, the trial court specifically interlineated a safeguard
into the order that provides that Perea cannot remove the child from Cameron
County, and cannot have any other family members around S.W. except for
herself, her spouse, and the child’s mother.  Thus, Werbiski’s specific
concerns about James and his children were specifically addressed.

            E.O.’s
various incapacities denied the normal relationship and access between S.W. and
her mother.  Two of S.W.’s grandparents were dead.  The result left S.W. with
her father, his father, and one grandmother, Perea.  The trial judge could
rationally conclude that to deny S.W. access to her only fully functional
female blood relative would significantly impair the child’s emotional
well-being.

            An
extended number of factors have been considered by the courts in ascertaining
the best interest of the child.  See Holley v. Adams, 544 S.W.2d
367, 372 (Tex. 1976).  Included among the factors are the following:  (A) the
desires of the child;  (B) the emotional and physical needs of the child now
and in the future; (C) the emotional and physical danger to the child now and in
the future; (D) the parental abilities of the individuals seeking custody; (E)
the programs available to assist these individuals to promote the best interest
of the child; (F) the plans for the child by these individuals or by the agency
seeking custody; (G) the stability of the home or proposed placement; (H) the
acts or omissions of the parent which may indicate that the existing
parent-child relationship is not a proper one; and (I) any excuse for the acts
or omissions of the parent.  Id.

            The
record evidence supports the trial court’s finding of best interest of the
child under Holley subparts A, B, C, F, G, and H.  Id.  Nor do we
see where Werbiski challenged the trial court’s finding that the ordered
possession and access by Perea is in the best interest of the child.  When
findings of fact are filed and are unchallenged, they occupy the same position
and are entitled to the same weight as the verdict of a jury; they are binding
on an appellate court unless the contrary is established as a matter of law or
there is no evidence to support the finding.  McGalliard v. Kuhlmann,
722 S.W.2d 694, 696 (Tex. 1986). 

            We
determine, based on the record, that the trial court made a reasonable decision
based upon sufficient evidence and did not abuse its discretion.  See W.M.,
172 S.W.3d at 725; T.D.C., 91 S.W.3d at 872.  We overrule Werbiski’s
first issue.

                                                            B.  Incompetence

            Werbiski
notes the trial court made no finding that a parent of the child had been found
by a court to be incompetent.  Perea argues that E.O. is de facto incompetent
and that the trial court’s finding of medical incapacity is legally equivalent
to a court finding of incompetence.  We do not agree.  Our review of the record
indicates the trial court carefully crafted its factual findings.  Because no
court, including the trial court, found E.O. incompetent, section
153.433(b)(3)(B) of the family code is not satisfied and could not be a ground
for grandparent possession or access to a grandchild.  See Tex. Fam. Code Ann. §
153.433(b)(3)(B).  However, we fail to see how this non-finding constitutes an
abuse of discretion by the trial court.

                                                               
C.  Access

            Werbiski
also attacks the trial court’s finding that the biological mother, E.O., does
not have actual or court-ordered possession of or access to S.W.  It is
undisputed that E.O. does not have actual or court-ordered possession of S.W. 
The only question is access.  In support of his argument, Werbiski points to
two instances in the record.  In the first incident, Werbiski testified:  “I
had my sister with me because it was difficult for me to get E.O.–push E.O. out
and make sure that S.W. was okay because, I mean, she’s two.”  He described
that S.W., then a year and a half, just learned to walk and run, so she would
run everywhere.  The only time he could take S.W. to see E.O. was when somebody
would go with him to keep an eye on S.W.  The second instance referred to by
Werbiski is the cross-examination of Perea where she testified she saw S.W. for
five minutes at one of the nursing homes.  Werbiski cites no legal authority
for his argument.

            The
family code does not define the terms “possession” and “access.”  E.C. v.
Graydon, 28 S.W.3d 825, 831 (Tex. App.–Corpus Christi, 2000 no pet.).  When
a statute does not define a term, we apply the term’s ordinary meaning.   Id.
(citing Hopkins v. Spring Indep. Sch. Dist., 736 S.W.2d 617, 619 (Tex.
1987)); Alexander v. State, 803 S.W.2d 852, 855 (Tex. App.–Corpus
Christi 1991, writ denied); see also Tex.
Gov’t Code Ann. § 311.011 (West 2008).  We consult generally accepted
sources for common and legal definitions of words.  Graydon, 28 S.W.3d
at 831.  In Graydon, we held that access means:  freedom of approach or
communication; or the means, power, or opportunity of approaching,
communicating or passing to and from . . . “Access” to property does not
necessarily carry with it possession.  Id. (citing Black’s Law Dictionary 13 (6th ed.
1990)).

            The
trial court’s finding that E.O. is incapacitated is unchallenged by Werbiski or
the record.  S.W.’s mother is in a dire situation and even Werbiski cannot say
that E.O. recognizes him.  She cannot walk and gets around, according to
Werbiski, when someone pushes her in a wheelchair.  She was hospitalized some
three months for a stroke and remains confined to a nursing home.  The trial
court specifically found:








Because of a serious
brain related medical condition, a form of brain stroke, the biological mother
is incapable of caring for herself or tending to her own physical needs, and
she is living in an assisted care facility in Cameron County, Texas where she remains
medically incapacitated.

 

Again,
this finding is not challenged by Werbiski, nor is there any evidence in the
record to the contrary.  The record demonstrates that E.O. does not enjoy
freedom of approach or communication.  Applying the appropriate abuse of
discretion standard to the trial court’s finding that E.O. does not have actual
or court-ordered possession of or access to S.W., we find no abuse of
discretion.  See Derzapf, 219 S.W.3d. at 333.  We overrule this issue.

V.  Conclusion

            The
judgment of the trial court is affirmed.

                                    

                                                                                                                                    

                                                                        DON
WITTIG,

                                                                        Justice

 

Delivered and filed the 

30th day of June, 2011.

 

 









[1] Retired Fourteenth Court of Appeals Justice Don Wittig
assigned to this Court by the Chief Justice of the Supreme Court of Texas
pursuant to the government code.  See Tex.
Gov’t Code Ann § 74.003 (West 2005).





[2] Given E.O.’s age and condition, her
social security payments are presumably for disability.





[3] Presumably, this characterization
alludes to James’s son, variously described as being nine or eleven years old.