**In the Interest of M.A.M.,
a Minor Child.**

**No. 05–09–00396–CV.**

Court of Appeals of Texas,
Dallas.

April 15, 2011.

Rehearing Overruled July 12, 2011.

Kent Frank Brooks, Preston Commons West, Dallas, TX, for Appellant.

Michelle May O'Neil, O'Neil Attorneys Family Law, Dallas, TX, for Appellee.

Before Chief Justice WRIGHT and Justice FRANCIS and Chief Justice THOMAS, Retired.[1]

### OPINION

Opinion By Chief Justice THOMAS (Retired).

Father appeals from the trial court's order in a suit to modify the parent-child relationship. In four issues, Father contends the trial court abused its discretion in (1) ordering him to pay child support in excess of guidelines set forth in the Texas Family Code and ordering him to pay a portion of private school tuition, (2) denying his request to have the exclusive right to make decisions concerning the child's education and giving Mother that exclusive right; (3) refusing to lift the domicile restriction so that he could relocate the child to Atlanta; and (4) awarding to Mother the exclusive right to consent to medical, dental and surgical treatment involving invasive procedures and psychological and

---

1. The Honorable Linda Thomas, Chief Justice, Court of Appeals, Fifth District of Texas at Dallas, Retired, sitting by assignment.

psychiatric treatment. For the reasons set out below, we modify the trial court's order to delete the requirement that Father pay any portion of the child's private school tuition and to correct the amount of child support that he must pay to $1,200 monthly. We affirm the trial court's order as modified.

## Background

Mother and Father were divorced on May 31, 2005. The trial court appointed Mother and Father as joint managing conservators of their only child. Father was given the exclusive right to designate the primary residence of the child within Dallas and contiguous counties. The trial court ordered that decisions regarding the child's education and medical and mental health treatment of the child were to be by agreement between the parents.

In 2006, Father sought to modify the decree to give him the sole right to make education decisions for the child and to modify the time and place of exchange to accommodate the child's school schedule. Mother filed a counter petition to modify seeking to be appointed as sole managing conservator or, alternatively, that she be appointed the person who has the right to designate the primary residence of the child. Mother also requested the exclusive right to make decisions regarding the child's education and medical treatment. Father then filed two amended petitions to modify asking that his right to determine the child's residency not be restricted to Dallas and contiguous counties, that he be named sole managing conservator, and that he be allowed to relocate with the child to Atlanta, Georgia.

The trial court conducted a bench trial over three days in July 2008. The trial court signed its order modifying the divorce decree on January 14, 2009. In its order, the trial court gave Mother the exclusive right to establish the child's primary residence within Dallas and contiguous counties, and to make decisions concerning the child's education and medical and mental health treatment. The trial court also ordered Father to pay seventy-five percent of the child's private school tuition in addition to monthly child support in the amount of $1,500. This appeal timely followed.

## Standard of Review

We review a trial court's decision in a case concerning a modification of conservatorship under an abuse of discretion standard. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex.1982); *Coleman v. Coleman*, 109 S.W.3d 108, 110 (Tex.App.-Austin 2003, no pet.). A trial court abuses its discretion if it acts arbitrarily or without reference to guiding principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985); *Coleman*, 109 S.W.3d at 110. We may not reverse for abuse of discretion merely because we disagree with a decision of the trial court. *Downer*, 701 S.W.2d at 242.

Because the traditional sufficiency standard of review overlaps with the abuse of discretion standard in family law cases, legal and factual sufficiency are not independent grounds of error but are relevant factors in our assessment of whether the trial court abused its discretion. *In re A.B.P.*, 291 S.W.3d 91, 95 (Tex.App.-Dallas 2009, no pet.); *Peck v. Peck*, 172 S.W.3d 26, 33 (Tex.App.-Dallas 2005, pet. denied). To determine a legal sufficiency challenge, we must first examine the record for evidence supporting the trial court's finding, while ignoring all evidence to the contrary. *Cass v. Stephens*, 156 S.W.3d 38, 55 (Tex. App.-El Paso 2004, pet. denied). Second, if there is no evidence to support the trial court's finding, we then examine the entire record to see if the contrary position is

established as a matter of law. *Id.* This standard of review has been distilled into a two-pronged inquiry: (1) whether the trial court had sufficient information upon which to exercise its discretion; and (2) whether the trial court erred in its application of discretion. *See Vardilos v. Vardilos,* 219 S.W.3d 920, 921 (Tex.App.-Dallas 2007, no pet.); *Echols v. Olivarez,* 85 S.W.3d 475, 477–78 (Tex.App.-Austin 2002, no pet.); *Lindsey v. Lindsey,* 965 S.W.2d 589, 592 (Tex.App.-El Paso 1998, no pet.). According to this inquiry, the traditional sufficiency review comes into play with regard to the first question. *A.B.P.,* 291 S.W.3d at 95; *Moroch v. Collins,* 174 S.W.3d 849, 857 (Tex.App.-Dallas 2005, pet. denied). *Echols,* 85 S.W.3d at 478. An appellate court then proceeds to determine whether, based on the elicited evidence, the trial court made a reasonable decision. *Moroch,* 174 S.W.3d at 857. If some evidence of a substantive and probative character exists to support the trial court's decision, there is no abuse of discretion. *In re C.C.J.,* 244 S.W.3d 911, 917 (Tex.App.-Dallas 2008, no pet.).

 The trial court, as the fact finder in this case, is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *See City of Keller v. Wilson,* 168 S.W.3d 802, 819 (Tex.2005). In an appeal from a bench trial, findings of fact are the equivalent of jury answers to special issues. *Lindsey,* 965 S.W.2d at 591. The unchallenged findings of fact are binding on this Court unless the contrary is established as a matter of law or there is no evidence to support the finding. *See McGalliard v. Kuhlmann,* 722 S.W.2d 694, 696 (Tex.1986). This Court cannot substitute its conclusions for those of the trial court if there is sufficient competent evidence of probative force to support the trial court's findings. *Lindsey,* 965 S.W.2d at 591.

### Relocation to Atlanta

In his third issue, Father contends the trial court erred in refusing to lift the domicile restriction to allow Father to relocate with the child to Atlanta.

When a trial court appoints joint managing conservators, it must designate the conservator who has the exclusive right to determine the primary residence of the child. TEX. FAM.CODE ANN. § 153.134(b)(1) (West Supp.2009). A trial court may modify an order relating to conservatorship or possession and access to a child if: (1) it is in the best interest of the child; and (2) the circumstances of the child, or conservator, or other party affected by the order have materially and substantially changed since the date or rendition of the order. TEX. FAM.CODE ANN. § 156.101(a)(1) (West Supp.2009). The best interest of the child shall always be the primary consideration of the court in determining issues of conservatorship and possession of and access to the child. TEX. FAM.CODE ANN. § 153.002 (West 2008). These cases are "intensely fact driven, which is why courts have developed best-interest tests that consider and balance numerous factors." *Lenz v. Lenz,* 79 S.W.3d 10, 18–19 (Tex. 2002). Section 153.134 is silent as to factors a trial court should consider when determining whether a domicile restriction is in the best interest of the child. The supreme court has instructed us to consider the public policies outlined in family code section 153.001(a). *Lenz,* 79 S.W.3d at 14. Section 153.001 states that the public policy of Texas is to:

(1) assure that children will have frequent and continuing contact with parents who have shown an ability to act in the best interest of the child;

(2) provide a safe, stable, and nonviolent environment for the child; and

(3) encourage parents to share in the rights and duties of raising their child after the parents have separated or dissolved their marriage.

TEX. FAM.CODE ANN. § 153.001(a)(1)-(3) (West 2008). The *Lenz* court noted that a wide array of other factors can be relevant to the determination of a child's best interest after a parental relocation. These include the (1) reasons for and against the move, (2) education, health, and leisure opportunities afforded by the move, (3) accommodation of the child's special needs or talents, (4) effect of extended family relationships, (5) effect on visitation and communication with the noncustodial parent, (6) noncustodial parent's ability to relocate, and (7) child's age. *Lenz*, 79 S.W.3d at 15–16. We may also consider the general factors relevant to the best interest of a child, such as (1) the child's desires, (2) the child's current and future physical and emotional needs, (3) any physical or emotional danger to the child in the present or future, (4) the parental abilities of the individuals involved, (5) the programs available to those individuals to promote the child's best interest, (6) the plans for the child by these individuals, (7) the stability of the home, (8) acts or omissions by a parent tending to show that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex.1976).

Both Father and Mother stated in their respective petitions to modify that circumstances of the child or one of the conservators had materially and substantially changed. *See Thompson v. Thompson*, 827 S.W.2d 563, 566 (Tex.App.-Corpus Christi 1992, writ denied). In its findings of fact, the trial court found that "continuing the child's primary residence to Dallas and contiguous counties provides consistency for the child by allowing the child's environment, including school, doctors, friends, interactions with maternal grandparents, and [Mother's] home, to remain the same."

As support for his position, Father relies upon a case from this Court. *See In re D.M.D.*, 2009 WL 280465, *5 (Tex.App.-Dallas Feb. 6, 2009, no pet.) (mem. op). In *D.M.D.*, the mother had the right to designate the residence of the child as long as she resided in Kaufman or contiguous counties. After Mother remarried, she filed a motion to modify in which she notified the trial court that she was about to move to Austin. *Id.* at *1. The mother did move and the child attended school in Austin. The trial court ordered that the mother must reside in Kaufman or contiguous counties to designate the primary residence of the child otherwise the father was to have the right. On appeal, this Court concluded the trial court abused its discretion by imposing the residency restriction and reversed. *Id.* We noted that the evidence was sketchy as to what the child's life would be like if the mother abided by the residency restriction and also if the child resided with the father. *Id.* at *4. We noted that there was a "great deal of evidence" showing that it was in the child's best interest to remain in Austin and such was the opinion of the neutral third party who conducted the social study. *Id.*

■ In this case, the evidence presented at trial showed that the child's environment was stable. She had an established routine at school. She had her home with Mother and a close relationship with her maternal grandparents. She had relationships with friends from school and the neighborhood where she lived with Mother. She was involved in activities. The child also had an established pediatrician and therapist.

Conversely, the evidence showed uncertainties as to the child's life if she moved with Father to Atlanta. Father testified about a similar international school in Atlanta and also good public school options. He intended to arrange his teaching schedule so that he would be home with the child most of the time. He said a wife of one of his colleagues would help care for the child when he needed assistance. Father testified that if the child did not move to Atlanta, he would be able to return to Dallas and visit her twice a month.

Although Father had a good paying job as a tenured faculty member at SMU, he had not been happy in that job for quite some time. The position at Emory University provided him more money, a better working environment, and more prestige.

Mother is a nurse. At the time of trial, she held two part-time teaching positions at nursing schools in Dallas. She also worked for her father's company from her home. Mother considered relocating to Atlanta but to obtain work as a nurse in Atlanta, she would have to sit for a national exam. The national exam would be difficult because she had not worked as a nurse practitioner in more than fifteen years. Mother did not have any support of friends and family in Atlanta.

The court-appointed psychologist, Dr. Doyle, recommended the child be allowed to reside primarily with Father. She also testified the child appeared to be happy at her school. She testified the child manipulates Mother by being overly dependent and babyish but acknowledged that both the child and Mother were working on this issue with Joan Hill, the child's therapist. Dr. Doyle testified that school personnel in the past had described Mother as demanding and confrontational and said the child regresses significantly at school when Mother is present. She said school personnel had not made similar observations with respect to Father. Dr. Doyle acknowledged she had not spoken with school personnel in recent months to determine if there had been any change in their interactions with Mother.

Dr. Doyle testified Father controls his emotional reactions and is clear headed about what needs to happen for the child. He is somewhat self-centered and has little tolerance for those who do not see things his way. She described Mother as warm, engaging, and more fun to be around. According to Dr. Doyle, Mother has difficulty separating her own feelings from the child's and also has difficulty regulating her emotional reactions. Dr. Doyle acknowledged Mother was making progress with her personal mental health issues but still has a long way to go. She has not seen progress with Father's rigidity.

Dr. Robert Gordon, Mother's psychologist, testified he had been working with Mother "more extensively" since October 2007 and Mother had made good progress. Dr. Gordon testified Mother understands the child's relationship with Father is important and that she will foster a good relationship between Father and the child. Dr. Gordon testified Mother is in a healthy range and is psychologically capable of caring for the child. Mother and her parents are well bonded as a family unit.

Hill, the child's therapist, testified both Mother and Father participated in the child's counseling. She testified it would be a big adjustment for the child if she moved to Atlanta. She did not state, however, that the move would negatively impact the child.

Both the testimony of Dr. Gordon and certain testimony from Dr. Doyle support the trial court's decision to continue the residency restriction to Dallas and contiguous counties. Mother's plan for the child provided continued stability in the child's

environment. Father's plan contained uncertainties. The evidence showed Father would be able to continue visitation by returning to Dallas twice a month. Although Father will not be able to have the same amount of time with the child as he had prior to the move to Atlanta, that is an unavoidable consequence of relocation. Because there is evidence of a probative character to support the trial court's decision, we conclude the trial court did not abuse its discretion in continuing the residency restriction. We overrule Father's third issue.

## Child Support

In his first issue, Father complains of the child support order. Specifically, he complains of the increase in his monthly child support payment and also the additional child support obligation of seventy-five percent of the child's private school tuition.

■ In its findings of fact, the trial court found that Father's net resources exceeded $7,500 per month. Father does not challenge this finding. The trial court ordered monthly child support of $1,500 which is twenty percent of $7,500. At the time that Father filed his suit to modify, the child support guidelines for one child for a parent whose net resources exceeded $6,000 was twenty percent or $1,200. *See* Act of Apr. 6, 1995, 74th Leg., R.S., ch. 20, § 1, 1995 Tex. Gen. Laws 133, 162 (amended 2007) (current version at TEX. FAM.CODE ANN. § 154.125(a) (West Supp.2009–10)). Effective September 1, 2007, the Texas Legislature amended the statute to apply the child support guidelines to the first $7,500 of the obligor's net monthly resources. TEX. FAM.CODE ANN. § 154.125(a) (Vernon West 2009–10). The trial court followed the guidelines as amended in 2007. The amendment, however, applied only to a suit affecting the parent child relationship commenced on or after September 1, 2007 and does not apply in this case because the suit to modify was filed in 2006. *See In re A.B.A.T.W.*, 266 S.W.3d 580, 586 (Tex.App.-Dallas 2008, no pet.). Because the trial court applied the wrong statute, we modify the child support provision to reduce its amount to $1,200.

To impose child support beyond the guidelines, the record must contain evidence of the "proven needs" of the child. TEX. FAM.CODE ANN. § 154.126(a) & (b) (West 2008). To establish private school as a proven need, the evidence must show something special that makes the particular child need or especially benefit from some aspect of non-public schooling. *In the Interest of Pecht*, 874 S.W.2d 797, 801–02 (Tex.App.-Texarkana 1994, no writ) (evidence supported private school as proven need for child with severe learning disabilities).

■ The trial court found it was in the child's best interest that beginning on January 1, 2009 Father pay as additional child support seventy-five percent of the child's private school tuition not to exceed $10,950 per year. However, the record in this case contains no evidence that private school is a "proven need" of the child.

The evidence does not show the child has any type of learning disability or any other type of need that requires the services offered only at a private school. Mother herself testified she intended to look for a house in a good public school district. Mother did not see private school as a *need* of the child. Father looked into public schools in Atlanta. He did not view private school as a *need* of the child. Mother cites to evidence that Dr. Doyle recommended the child stay at the Dallas International School if she remained in Dallas. Dr. Doyle explained that the parents chose that school and it was best that the parents agree on the school. She also

acknowledged the public school option in Atlanta looked good to her as well. Dr. Doyle did not testify that private school was a *need* of the child.

We conclude there is no evidence that private school is a "proven need" of the child. Accordingly, the trial court abused its discretion in ordering Father to pay a portion of the child's private school tuition. We sustain Father's first issue.

### Decisions Regarding the Child's Education and Health

In his second and fourth issues, Father complains of the trial court's awarding the exclusive rights to Mother to make education decisions for the child and to consent to medical, dental, and surgical treatment involving invasive procedures as well as psychiatric and psychological treatment of the child. He contends these decisions should remain by agreement as provided in the divorce decree.

In rendering an order appointing joint managing conservators, the trial court is required to specify the rights and duties of each parent regarding the "physical care, support, and education" of the children involved. Tex. Fam.Code Ann. § 153.134(b)(2) (West 2008). The trial court retains broad discretion in crafting the rights and duties of each conservator so as to effectuate the best interest of the child. *In re C.C.J.*, 244 S.W.3d at 919. Although geographic distance does not render joint decision making impossible, it makes it impractical. *See Doyle v. Doyle*, 955 S.W.2d 478, 481 (Tex.App.-Austin 1997, no pet.). The court in *Doyle* questioned how a father in Florida could evaluate schools, after school activities, and health care providers located in Texas. *Id.*

Here, the trial court found that during the pendency of the modification suit, Father unilaterally decided to relocate out of state. The trial court found that Father voluntarily chose to accept a position at a university in Atlanta, Georgia, although his employment here remained available. The trial court also found that relocation by Father to Atlanta "renders the parties unable to implement the parenting orders" contained in the divorce decree. Finally, the trial court concluded it is in the child's best interest for Mother to have the exclusive rights to make decisions regarding the child's education and to consent to medical, dental, and surgical treatment involving invasive procedures and to consent to psychiatric and psychological treatment of the child. Having reviewed the entire record, we agree.

The parties divorced in 2005. Beginning in the first year after the parties' divorce, Mother and Father had problems co-parenting. In fact, the flurry of motions to modify began when Mother and Father could not agree on what school the child should attend in the 2006–2007 school year, even after attempting to the resolve the issue with the assistance of the court-appointed mediator/facilitator/parent coordinator. Over the next nearly two years, numerous hearings were held in this case relating to the parents' inability to co-parent the child. Suffice it to say, these parties were no strangers to the trial judge. During this time, the trial judge had ample opportunity to observe and evaluate the personalities involved, weigh the credibility of the various witnesses, assess the physical, mental, moral, and emotional needs of the child, and make an informed decision as to how these two people will co-parent when they do not live in the same state. We cannot say it was unreasonable for the trial court, based on the record, to conclude that it was in the child's best interest that certain exclusive rights be given to Mother, given that Mother will have possession of the child for the vast majority of the time and given

the geographic distance between the parties. As a joint managing conservator, Father retains the right to consult with school officials regarding the child's welfare and educational status, and he retains the right to have access to the child's health records and to consult with doctors and therapists.

In reaching this conclusion, we briefly address the dissent's concern in allowing the Mother to have the exclusive right to make health related decisions in light of the fact that she had, in the past, made sexual abuse allegations against Father. At trial, Mother was questioned about this issue more than once. Mother said there had been no incidents since October 2006, explained that she was not accusing Father of abusing the child, explained why she was suspicious at one time (Father would not respond to her inquiries when the child had a bad diaper rash or a "badly burned" bottom), but said she now felt "much better about it" and wanted to leave it in the past. As the sole judge of the credibility of the witnesses, the trial court was entitled to believe Mother on this issue.

Considering the record in this case, we cannot conclude the trial court abused its discretion in giving mother exclusive rights in education and health-related decisions for the child. We overrule Father's second and fourth issues.

### Conclusion

We modify the trial court's order to delete the requirement that Father pay any portion of the child's private school tuition and correct the amount the amount of monthly child support from $1,500 to $1,200. We affirm the trial court's order as modified.

WRIGHT, C.J., concurring and dissenting.

Opinion By Chief Justice WRIGHT, concurring and dissenting.

Father appeals from the trial court's order in a suit to modify the parent-child relationship. The majority affirms the trial court's order with respect to not allowing Father to relocate with the child to Atlanta and giving Mother the exclusive right to make education decisions for the child and to consent to medical, dental, psychological, and psychiatric treatment for the child. The majority modifies the trial court's order relating to the amount of child support and reverses the portion of the order requiring Father to pay a percentage of the child's private school tuition. I concur in the majority's resolution of the issues of relocation, child support, private school tuition, and the right to make education decisions for the child. I disagree, however, with the majority's holding affirming the trial court giving Mother the exclusive right to consent to medical, dental, psychological, and psychiatric treatment for the child. I respectfully dissent to that portion of the majority's opinion.

In rendering an order appointing joint managing conservators, the trial court is required to specify the rights and duties of each parent regarding the "physical care, support, and education" of the children involved. TEX. FAM.CODE ANN. § 153.134(b)(2) (West 2008). The trial court retains broad discretion in crafting the rights and duties of each conservator so as to effectuate the best interest of the child. *In re C.C.J.*, 244 S.W.3d 911, 917 (Tex.App.-Dallas 2008, no pet.).

In cases where one parent is given the exclusive right to make these decisions, the evidence generally supports that it is in the best interest of the child because one parent is a better choice. *See Swaab v. Swaab*, 282 S.W.3d 519, 533 (Tex.App.-

Houston [14th Dist.] 2008, pet. dism'd w.o.j.) (father unable to listen to any feedback from another party); *Baltzer v. Medina*, 240 S.W.3d 469, 477 (Tex.App.-Houston [14th Dist.] 2007, no pet.) (mother indifferent or non-responsive to some of child's needs); *Garza v. Garza*, 217 S.W.3d 538, 553–54 (Tex.App.-San Antonio 2006, no pet.) (mother had difficulty thinking rationally, controlling her mood swings, and arriving at a logical solution when faced with a problem).

Pursuant to the divorce decree, decisions regarding the child's medical, dental, and psychiatric treatment were to be made by agreement between Mother and Father. Father contends that these decisions should remain by agreement. I agree.

Mother states in her brief "[b]y virtue of his choice to relocate, Father voluntarily rendered it impractical, if not impossible, for him to actively participate in these decisions in an informed and meaningful manner." Mother also contends that she should have the exclusive right to make these decisions because of past difficulties in co-parenting.

Aside from Mother's own testimony, there is no evidence that Mother should have the exclusive right to make these decisions. Dr. Doyle testified that the trial court specified the child's pediatrician in the divorce decree because Mother was "doctor shopping." In the rendition of the divorce decree, the trial judge stated that Mother had made unfounded allegations that Father had sexually abused the child and stated there was "repetitive, secretive and persistent questioning of mental health professionals and doctors" regarding the child's behavior to see if one of them would "take the bait and call Dad a potential molester." The divorce decree prevents either parent from taking the child to a mental health professional, including play therapists, without the agreement of the other parent. In her October 9, 2007 report filed after the petitions to modify, Dr. Doyle recommended that the trial court appoint a psychologist to be used to monitor the child to "minimize the high likelihood of additional allegations of abuse or neglect of [the child] raised by [Mother] . . ." Dr. Doyle also testified that she would not be surprised to learn that in April of 2008, Mother had reported that the child had a terrible burn on her labia but that everyone was afraid of getting into it.

At the time of trial, Mother denied any recent sexual abuse allegations. However, such allegations did exist when the petitions to modify were filed. The child's counselor, Joan Hill, testified at this trial that the parties had not gotten past the sexual abuse allegations but they were "fading."

The allegations of sexual abuse prompted the trial court to prohibit "doctor shopping" in the divorce decree. That issue remains in contention between the parties. There is no evidence that Father is indifferent to the child's health related needs or that he has any difficulty with making rational decisions. Despite the fact that Father is in Atlanta, there is no evidence that he could not participate in making informed decisions. He could communicate with doctors and therapists by phone and e-mail. He already had an established relationship with the child's therapist and pediatrician. Father could have access to the same information as Mother in making health related decisions despite the geographical divide. In light of all these circumstances, I would hold the trial court abused its discretion in awarding to Mother the exclusive right to make health-related decisions for the child.