**Affirm and Remand; Opinion Filed January 15, 2020**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-19-00904-CV

## IN THE INTEREST OF J.R., A MINOR CHILD

On Appeal from the 305th Judicial District Court
Dallas County, Texas
Trial Court Cause No. JC-18-1023-X

# MEMORANDUM OPINION

Before Justices Schenck, Osborne, and Reichek
Opinion by Justice Osborne

After a bench trial, the trial court signed an order appointing the Dallas County Child Protective Services Unit of the Texas Department of Family and Protective Services (the "Department") as permanent managing conservator of J.R. "for purposes of [J.R.'s maternal aunt] to complete the Fostering Connections Program." The trial court also appointed J.R.'s parents as joint permanent possessory conservators, and made a finding that Father "has engaged in a history or pattern of family violence" as defined in the family code. Father appeals, contending the trial court abused its discretion "in finding that the maternal aunt should be named the managing conservator." We affirm the trial court's order.

### BACKGROUND

J.R. was born in July 2018. The Department removed him from Mother's care when he was two months old after receiving and investigating a report of neglectful supervision. Mother had taken J.R. to the hospital, worried that he was having seizures. According to a subsequent

Department report, however, Mother appeared to be "acting as if she was under the influence" and she admitted using methamphetamine, heroin, and marijuana in the two days prior to the Department's investigation. Father was out of town at the time. When contacted by the Department, Father explained that he had been giving Mother $200 per day to purchase food and supplies for the baby in his absence. Although Mother had called him requesting more money, Father was not alarmed by her request despite knowledge of her extensive drug history. The Department investigator told Father that until Father's return, J.R. must be placed with a family member, but Father "didn't have anybody."

After a medical examination determined that J.R. was not having seizures, he was placed in foster care. The Department investigated Aunt, Mother's sister, as a possible placement, and after completing a home study, placed J.R. with Aunt. Meanwhile, Father tested positive for cocaine on September 9, 2018, shortly after the Department filed its original petition in this case.

At trial, the Department offered evidence of Father's criminal history and evidence of domestic violence by Father against Mother. Father's criminal history included charges of assault, bodily injury, driving under the influence, criminal trespass, and unlawful use of a motor vehicle. Father admitted that he was continuing to drive without a license at the time of trial. Mary Capehart, the Department worker assigned to the case, testified that Mother and Father met when Father picked up Mother at a gas station convenience store. Father has provided Mother with drugs. Mother told Capehart that Father "had hit her and she showed me different bruises on her," including bruises on her forehead by her hairline and a bruise and scrape on her arm.

Capehart testified that J.R.'s physical health or emotional development could be significantly impaired if he witnessed domestic violence between his parents. On cross-examination, she testified to her concerns about Father's parenting abilities:

> I'm concerned that he doesn't have the actual parenting skills needed to provide for all of [J.R.'s] needs, his well-being, his nurturing. I'm concerned that he doesn't

have a plan in place for child care. He doesn't have any idea what he's going to do. He is continuing to provide drugs to [Mother]. And he is also committing domestic violence on him [sic], which could affect [J.R.] since he is a vulnerable one year old. All of these things could affect his well-being. And physically, he could actually get hurt during these domestic violence episodes.

Capehart also testified to her concern that Father controlled Mother, giving the example that Father had instructed Mother not to appear in court on certain occasions. She testified that controlling behavior "falls into the pattern of domestic violence," and she stated her concern that Father emotionally abused Mother. Although Mother told Capehart she was "tired of being hit" by Father and "tired of [Father] giving her drugs," Capehart believed that "based on [Father's] control over [Mother], she just couldn't leave him ultimately."

Capehart also testified that Father has traveled to Missouri, Kentucky, Georgia, and Florida for his work and was often away. Father did not give Capehart any plan for J.R.'s care during the times he would be traveling for work.

According to Aunt's testimony, Mother told Aunt that Father "was very aggressive towards her while she was pregnant" and "was buying her drugs while she was pregnant." Aunt came to stay with Mother and Father for a short period after J.R. was born. She said that Father "didn't allow us to hold the baby while he was there. He told us, 'if he cries, you just have to let him cry. He has to learn. Leave him in his crib.'" Aunt testified that J.R. now lives with her and they have "a pretty normal routine." Mother and Father visit J.R., although Father's visits depend on his travel for work.

Aunt also explained that Mother "is not [in] a safe situation" living with Father "because of the domestic violence." She testified that Mother told her about Father hitting her. Mother sent Aunt pictures of her bruises. Aunt sent the pictures to J.R.'s guardian ad litem and the case worker. Aunt also testified that Father admitted "hold[ing] [Mother] down" when she used drugs, because "when she uses, she just goes crazy and sometimes I have to do what I have to do." Aunt testified

that Father provides Mother with "drugs or money for drugs" and Mother has refused help to leave Father.

In questioning by the guardian ad litem, Aunt testified that Mother sustained multiple bruises on her face and arms in the month before trial. Mother sent pictures to Aunt and told her that Father had caused the injuries. Aunt also testified that Mother told her about injuries caused by Father hitting her in the face, throwing something at her across a room, and stabbing her. Aunt observed some of these injuries and saw pictures of others. The injuries occurred between September of 2018 and the date of trial in July 2019. A picture of Mother's black eye was admitted into evidence.

Aunt testified that she is a full-time student, working on a business degree with an emphasis in human resources. She also works part-time from home. She does not have a car, and relies on her brother or a friend when she needs to take J.R. to the doctor. She also admitted that she is on probation for misdemeanor theft. The record includes the Department's detailed assessment of Aunt and her home, addressing the issue of her probation as well as Aunt's background, her plans for J.R., her relationship with Mother, the safety of her home, her financial situation, and other issues. Aunt testified that her goal "is to keep [J.R.] in a safe and healthy and loving environment." She testified that J.R. is "doing great." He is crawling and attempting to walk, and weighs "right around where he's supposed to." J.R. was born prematurely and was expected to need a cranial helmet, but "his head has grown proportionately how it should have," so the helmet was not necessary.

Father testified that he has two adult children. His daughter, 26, is a registered nurse, and his son, 22, is a certified mechanic. He testified that he is experienced in raising children. He has prepared a room for J.R. in his apartment, with toys and a changing table. He testified that he has worked for the same employer for eleven or twelve years, and although his work involved travel

in the past, he has asked his employer to assign him to local tasks instead. He testified that he knows how to change diapers, bathe a child, and cook. He has looked into day care in his area and has a large family who could provide assistance when needed. On cross-examination, he admitted to a few criminal offenses, but denied others. He testified that J.R. was thriving in Aunt's care only because of "genetics"; Aunt "has done nothing special" for him. He denied much of Aunt's testimony. He testified that the only domestic violence in the home was by Mother against him. According to Father, Mother's bruises were from falling down the stairs or other incidents as a result of her drug use.

In its order of August 7, 2019, the trial court found that appointment of Father and Mother as managing conservators would not be in J.R.'s best interest "because such appointment would significantly impair the child's physical health or emotional development." The court found that it is in J.R.'s best interest to appoint the Department as permanent managing conservator for the purpose of permitting Aunt to complete the Fostering Connections Program. The court appointed Mother and Father as Joint Permanent Possessory Conservators of the child.

The court also found that Father "has engaged in a history or pattern of family violence, as defined by Section 71.004 of the Texas Family Code, during the two years preceding the date of the filing of this suit or during the pendency of this suit," and that "unsupervised access would endanger the physical health or safety of the child." But the court permitted "non-specific visitation" by both parents, finding it to be in J.R.'s best interest. Consequently, the court made specific orders regarding supervised visitation for each parent.

In a single issue, Father alleges that the trial court abused its discretion in finding that Aunt should be named J.R.'s managing conservator. He acknowledges that the trial court's order appointed the Department as managing conservator, but explains that the Department's appointment "was only so that [Aunt] could complete the Fostering Connections program and

upon such, she'll be named the managing conservator. Thus, for ease of reference, Father will refer to [Aunt] being named the managing conservator."

## STANDARD OF REVIEW

We review a trial court's conservatorship determination for abuse of discretion. *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007). We may reverse the trial court's ruling only if it is arbitrary and unreasonable. *Id.* Legal and factual sufficiency are not independent grounds of error in conservatorship cases but are relevant factors in determining whether an abuse of discretion occurred. *In Interest of L.W.*, No. 02-16-00091-CV, 2016 WL 3960600, at *2 (Tex. App.—Fort Worth Jul. 21, 2016, no pet.) (mem. op.). To determine whether the trial court abused its discretion because the evidence was insufficient to support its decision, we consider whether the trial court (1) had sufficient evidence upon which to exercise its discretion and (2) erred in its exercise of that discretion. *Id.* We conduct the applicable sufficiency review with regard to the first question. *Id.* We then determine whether, based on the elicited evidence, the trial court made a reasonable decision. *Id.* The trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *In re M.A.M.*, 346 S.W.3d 10, 14 (Tex. App.—Dallas 2011, pet. denied).

## APPLICABLE LAW

The trial court made a finding of domestic violence against Father. "The court may not appoint joint managing conservators if credible evidence is presented of a history or pattern of past or present child neglect, or physical or sexual abuse by one parent directed against the other parent, a spouse, or a child . . . ." TEX. FAM. CODE § 153.004(b). "The court shall consider the commission of family violence or sexual abuse in determining whether to deny, restrict, or limit the possession of a child by a parent who is appointed as a possessory conservator." TEX. FAM. CODE § 153.004(c).

Subject to family code section 153.004(b)'s prohibition, "unless the court finds that appointment of the parent or parents would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development, a parent shall be appointed sole managing conservator or both parents shall be appointed as joint managing conservators of the child." TEX. FAM. CODE § 153.131(a). To support a finding of significant impairment, the evidence must do more than merely raise a suspicion or speculation of possible harm. *In re B.B.M.*, 291 S.W.3d 463, 467 (Tex. App.—Dallas 2009, pet. denied). Instead, the evidence must support the logical inference that some specific, identifiable behavior or conduct of the parent, demonstrated by specific acts or omissions, will probably harm the child. *Id.*; *R.H. v. D.A.*, No. 03-16-00442-CV, 2017 WL 875317, at *5 (Tex. App.—Austin Mar. 2, 2017, pet. dism'd) (mem. op.). This is a heavy burden that is not satisfied by merely showing the nonparent would be a better choice as custodian of the child. *In re B.B.M.*, 291 S.W.3d at 467. Acts or omissions that constitute significant impairment include, but are not limited to, physical abuse, severe neglect, abandonment, drug or alcohol abuse, or immoral behavior by the parent. *Id.* at 469. A factfinder may infer the present fitness of the parent to be managing conservator from the parent's recent, deliberate past misconduct. *R.H.*, 2017 WL 875317, at *5. But evidence of past misconduct, standing alone, may not be sufficient to show present unfitness. *Id.*

"It is a rebuttable presumption that the appointment of the parents of a child as joint managing conservators is in the best interest of the child." TEX. FAM. CODE § 153.131(b). But "[a] finding of a history of family violence involving the parents of a child removes the presumption under this subsection." *Id.*

A child's best interest is a trial court's primary consideration in determining conservatorship, possession, and access. TEX. FAM. CODE § 153.002; *In re V.L.K.*, 24 S.W.3d 338, 342 (Tex. 2000). In determining a child's best interest, a court may consider the relevant factors

such as (1) the child's desires, (2) the child's current and future physical and emotional needs, (3) any physical or emotional danger to the child in the present or future, (4) the parental abilities of the individuals involved, (5) the programs available to those individuals to promote the child's best interest, (6) the plans for the child by these individuals, (7) the stability of the home, (8) acts or omissions by a parent tending to show that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *In re K.L.W.*, 301 S.W.3d 423, 426 (Tex. App.—Dallas 2009, no pet.) (citing *Holley v. Adams,* 544 S.W.2d 367, 371–72 (Tex.1976)) (the "*Holley* factors"). Proof of a child's best interest is not limited to these factors, nor do all *Holley* factors apply in every case. *In Interest of E.A.D.P.*, No. 05-15-01210-CV, 2016 WL 7449369, at *4 (Tex. App.—Dallas Dec. 28, 2016, no pet.) (mem. op.).

In addition, when a child is less than three years of age, the trial court "shall consider evidence of all relevant factors" in determining possession, including, among other factors, the caregiving provided to the child before and during the current suit; the effect on the child that may result from separation from either party; the child's physical, medical, behavioral, and developmental needs; the physical, mental, emotional, economic, and social conditions of the parties; the availability of the parties as caregivers and the willingness of the parties to personally care for the child; the child's need to develop healthy attachments to both parents; the child's need for continuity of routine; the ability of the parties to share in the responsibilities, rights, and duties of parenting; and any other evidence of the best interest of the child. TEX. FAM. CODE § 153.254(a); *see also Smith v. Payandeh*, No. 01-18-00463-CV, 2019 WL 2528197, at *7 (Tex. App.—Houston [1st Dist.] June 20, 2019, no pet.) (mem. op.) (discussing factors). Family code section 153.254(d) also provides that the trial court "shall render a prospective order to take effect on the child's third birthday, which presumptively will be the standard possession order." TEX. FAM. CODE § 153.254(d).

DISCUSSION

Father argues there was no evidence to support placement with Aunt because there was no evidence presented about her home, her parenting abilities, or her plans for the child. He also contends that because he successfully raised two children from a prior marriage, "he could care for this child appropriately and provide him with a safe and stable home." He argues that his "explanations for Mother's injuries make sense if she was high and refused to leave his apartment," because he "would restrain her and keep her from hurting herself when she became unconscious and fell down the stairs." He argues that he "made the hard decision" to evict Mother and obtain a restraining order, he had a daycare plan, he made arrangements so that he would no longer be working out of state, and he has family and friends to help in case of an emergency. He offered the testimony of a character witness who said Father was "a good man" and also testified, "I have never seen any violence out of [Father] at all."

Father also explains that his "extensive criminal history" occurred prior to 2015, and many of the charges were dismissed without prosecution. He attributes his "legal problems" to past losses of his job, family, and home, but argues that he is now employed and able to pay his bills.

But as to the trial court's family violence finding, Father argues only that he gave an alternative explanation for Mother's injuries that the trial court should have believed. The trial court was the sole judge of the witnesses' credibility and weight to be given their testimony, *In re M.A.M.*, 346 S.W.3d at 14, and Capehart's and Aunt's testimony contradicted Father's.[1] The trial court could not appoint Father as managing conservator if credible evidence was presented of a history or pattern of past or present physical abuse by one parent directed at the other parent. TEX. FAM. CODE § 153.004(b); *see also In Interest of D.M.*, No. 02-16-00473, 2017 WL 1173847, at *4 (Tex. App.—Fort Worth Mar. 30, 2017, no pet.) (mem. op.) (history of family violence alone

---

[1] Mother's testimony was inconsistent. She both admitted and denied that Father hit or abused her.

justified trial court's order naming Department as managing conservator and denying parents' requests to be named managing conservators). When appointing Father as possessory conservator, the trial court was required to consider the commission of family violence in determining whether to deny, restrict, or limit Father's possession of J.R. TEX. FAM. CODE § 153.004(c). Although the court had discretion to deny Father access to J.R. based on Father's history of family violence, *see id.* § 153.004(d), the court instead chose to permit access by rendering an order designed to protect J.R.'s safety and well-being. *See id.* § 153.004(d-1). We conclude the trial court had sufficient evidence on which to exercise its discretion and made a reasonable decision based on the evidence. *In Interest of L.W.*, 2016 WL 3960600, at *2.

Father also argues that the Department presented little or no evidence of the *Holley* factors or family code section 263.307[2] with respect to Aunt. He argues there was evidence that he had to pay Aunt's rent once to avoid her eviction. But the trial court also heard evidence that the Department recommended Aunt's conservatorship of J.R. after conducting a detailed caregiver home assessment that is included in the record. J.R.'s guardian ad litem made the same recommendation to the court. The trial court heard Aunt's testimony as well as Capehart's, Mother's, and Father's. Further, the safety of Aunt's home for J.R. in light of Father's recent family violence was a relevant consideration under *Holley*. *See In re K.L.W.*, 301 S.W.3d at 426 (listing "any physical or emotional danger to the child in the present or future" as a *Holley* factor).

The State responds that the prompt and permanent placement of a child in a safe environment is presumed to be in the child's best interest. TEX. FAM. CODE § 263.307(a). Section 263.307(b) lists factors that should be considered by the court and the Department in determining whether the child's parents are willing and able to provide the child with a safe environment.

---

[2] Family code section 263.307 provides a list of factors that "should be considered by the court and the department in determining whether the child's parents are willing and able to provide the child with a safe environment." TEX. FAM. CODE ANN. § 263.307(b).

*Id.* § 263.307(b)(1)–(13). These factors include the child's age and vulnerabilities; the magnitude, frequency, and circumstances of the harm to the child; whether there is a history of abusive or assaultive conduct or substance abuse by the child's family; the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; and whether the child's family demonstrates adequate parenting skills. *Id.* § 263.307(b)(1), (3), (7), (8), (11), (12). The trial court heard evidence on all of these factors.

A trial court is given wide latitude in determining the best interests of minor children. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *see also In Interest of D.M.*, 2017 WL 1173847, at *4 (although parents provided evidence on two best interest factors, they improperly ignored other factors trial court could have considered, including their inability to protect children from family violence). After reviewing the record as a whole, we conclude the trial court did not abuse its discretion in finding that J.R.'s best interest "will be served by appointing [the Department] as Permanent Managing Conservator for purposes of [Aunt] to complete the Fostering Connections Program." We decide Father's sole issue against him.

In its appellate brief, the State notes that the trial court did not render a prospective order to take effect upon J.R.'s third birthday as required under family code section 153.254(d). *See* TEX. FAM. CODE § 153.254(d) ("The court shall render a prospective order to take effect on the child's third birthday, which presumptively will be the standard possession order."). We remand for the sole purpose of the trial court's compliance with family code section 153.254(d).

**CONCLUSION**

We affirm the trial court's Order Appointing a Permanent Managing Conservator. We remand the cause to the trial court for entry of an order in compliance with section 153.254(d) of the family code.

/Leslie Osborne/
LESLIE OSBORNE
JUSTICE

190904F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

IN THE INTEREST OF J.R., A MINOR CHILD

No. 05-19-00904-CV

On Appeal from the 305th Judicial District Court, Dallas County, Texas
Trial Court Cause No. JC-18-1023-X.
Opinion delivered by Justice Osborne; Justices Schenck and Reichek participating.

In accordance with this Court's opinion of this date, we **AFFIRM** the trial court's August 7, 2019 Order Appointing a Managing Conservator. We **REMAND** this cause to the trial court for the sole purpose of the trial court's compliance with section 153.254(d) of the family code.

Judgment entered this 15th day of January, 2020.