**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-20-00042-CV**
_____

**IN THE INTEREST OF E.R.A.**

**On Appeal from the 418th District Court**
**Montgomery County, Texas**
**Trial Cause No. 19-01-00655-CV**

**MEMORANDUM OPINION**

In this post-divorce modification suit affecting the parent-child relationship, C.A., the father of the minor child, E.R.A., appeals the trial court's final order appointing the child's mother, J.B., as the managing conservator with the exclusive right to designate E.R.A.'s primary residence. In issue one, C.A. argues that the trial court abused its discretion by giving the exclusive right to determine the primary residence of E.R.A. to J.B., because the evidence was legally and factually insufficient. In issue two, C.A. complains that the trial court erred by not allowing the testimony of a rebuttal witness. We affirm the trial court's judgment.

1

BACKGROUND

In June 2014, C.A. and J.B. divorced. In the Final Decree of Divorce, the trial court appointed C.A. and J.B. as joint managing conservators of E.R.A. The trial court did not appoint either parent as the conservator who has the exclusive right to designate the primary residence of the child, but the trial court did order that the parties "shall not move their respective residences, or the child, from the following specific area in Northwest Harris County for the purpose of changing their residence or that of the child until modified by further order . . . or by written agreement signed by the parties and filed with the court." The trial court's order indicated that the parties agreed to the following geographical boundary: "Harris County, outside Beltway 8, North of I-10 and West of 45 North." The record shows that following the divorce, both parties moved outside of the geographical boundary.

In September 2018, C.A. filed a petition to modify the parent-child relationship, contending that the "circumstances of the child, a conservator, or other party affected by the order to be modified have materially and substantially changed since the date of rendition of the order to be modified." C.A. alleged that J.B. had engaged in a history or pattern of child neglect and that the trial court should consider J.B.'s conduct in determining whether C.A. should be appointed as sole managing conservator. C.A. requested that if the parties failed to enter a written agreement containing provisions for modification, the trial court appoint him as the conservator

who has the right to determine the primary residence of the child. J.B. filed a counter-petition to modify the parent-child relationship, requesting that the trial court appoint her and C.A. as joint managing conservators of E.R.A. and designate her as the conservator who has the exclusive right to determine the primary residence of the child within a geographical area established by the court. J.B. also requested that the geographical restriction be modified to include a broader area of Harris County.

The trial court conducted a trial on the merits. C.A. testified that he divorced in 2014, and E.R.A., who is currently six years old, is his only child. C.A. explained that in the final decree, he and J.B. agreed to a split custody arrangement that included a geographical restriction in Harris County, and the decree did not award either party the exclusive right to designate the primary residence of E.R.A. J.B. testified that shortly after the divorce, J.B. moved outside of the geographical restriction to Huntsville, and C.A. agreed to the move and to having possession every weekend. C.A. testified that they intended for the agreement to be in effect for two years or until J.B. finished or left school. According to C.A, J.B. moved two additional times without revisiting their agreement, and C.A. explained that he filed a petition to modify the parent-child relationship because he was concerned that the moves were seriously affecting E.R.A. and J.B. had a pattern of neglecting E.R.A. C.A. explained that his concerns included E.R.A.'s attendance and tardiness at

3

school, her disrespectful behavior toward her teachers, and a noticeable bruise or rash on E.R.A.'s face.

C.A. testified that after he filed his petition, J.B. moved back to Houston. C.A. testified that he has moved five times since the divorce and has lived outside the geographical restriction once, and for the past two years he has lived with his best friend, who is married, to save money for a house. C.A. explained that he remarried in December 2018, and that his wife, M.A., has been involved in parenting E.R.A. C.A. also testified that J.B. has had multiple relationships since the divorce, and C.A. was concerned that J.B.'s marriage to her wife, K.W., was confusing to E.R.A. C.A. further testified that J.B. does not involve him in making decisions regarding E.R.A.'s health and education, and C.A. believed that J.B. would not follow the trial court's orders if she were the primary conservator. C.A. testified that if he had the exclusive right to determine E.R.A.'s residence, he would enroll E.R.A in the Waller school district and keep her in the Cypress area near her family, friends, and church. C.A. testified that he was concerned that E.R.A.'s current school district has low standardized testing scores.

M.A. testified that she loves E.R.A. and treats her like her own child. M.A. testified that she had noticed changes in E.R.A.'s behavior, and M.A. explained that E.R.A. was dieting, did not want to eat, was very clingy, and had developed separation anxiety. M.A. also testified that E.R.A. no longer liked princesses or pink,

4

and her new favorite color was black. M.A. explained that J.B. does not have the same beliefs and values regarding how E.R.A. should be raised. According to M.A., she had concerns about the stability of J.B.'s relationships.

C.A.'s father, J.A., testified that C.A. and M.A. have a good relationship with E.R.A., and they make decisions in her best interest. According to J.A., it would be in E.R.A.'s best interest for C.A. to have the right to designate E.R.A.'s primary residence, because C.A. offers a more stable environment. J.A. testified that E.R.A.'s demeanor has changed, and E.R.A. is scared to be alone and is very apologetic. According to J.A., E.R.A. used to be "girly," but she has become more concerned about her appearance and no longer likes school.

Krystal Nunez, the principal of E.R.A.'s former school, testified that E.R.A.'s attendance was not abnormal, but she was often tardy. Nunez testified that she did not have any concerns about E.R.A., and she did not notice any changes in E.R.A.'s behavior or demeanor. According to Nunez, E.R.A. was well behaved and academically superior. Nunez also explained that she never had any concerns about J.B.

Carrie Savoy, E.R.A.'s kindergarten teacher, testified that E.R.A. was a great student, but she had issues with E.R.A. talking and being disrespectful. Savoy testified that E.R.A. was more disruptive when she was with J.B., and after spending

time with C.A., E.R.A. was more obedient. According to Savoy, J.B. was concerned that she was having problems with E.R.A.

N.A., J.B.'s sister, testified that J.B. and E.R.A. lived with her for approximately a year, and J.B. is a very loving and nurturing mother. N.A. testified that she did not have any concerns about E.R.A. living with J.B. and K.W. or moving to a new school in Houston. According to N.A., it was in E.R.A.'s best interest to remain with J.B. during the week.

J.B. testified that after the divorce, she and E.R.A. lived with her boyfriend. J.B. explained that she moved out of the restricted area two years after the divorce to attend nursing school in Huntsville, where she lived with a roommate for approximately one year. J.B. testified that she never filed a signed, written agreement with the court to change the geographical restriction in the final decree, but C.A. agreed to the move. J.B. testified that she got engaged while she was living in Huntsville, but she never lived with her fiancé and he never spent the night when E.R.A. was home. J.B. explained that she ended the engagement after two years, moved to Conroe, and began dating K.W. J.B. testified that after two months of dating, K.W. began taking E.R.A. to school and eventually moved into the apartment J.B. shared with N.A. J.B. testified that K.W. is "pretty involved" in E.R.A.'s life and acts like a stepparent. According to J.B., K.W. and E.R.A. have a wonderful relationship. J.B. explained that E.R.A. was initially confused and asked questions

6

about J.B.'s relationship with K.W., and she talked to E.R.A. about same-sex marriages.

According to J.B., C.A. did not disagree with her move to Conroe, and although their agreement ended when she graduated school, J.B. did not move back to the geographic area. J.B. further testified that she did not get C.A.'s agreement before moving to Houston and enrolling E.R.A. in a new school, but J.B. claimed that C.A. did not object to the move. J.B. also testified that she did not get C.A.'s approval regarding E.R.A.'s healthcare decisions. J.B. denied that she had prevented C.A. from speaking to E.R.A. on the telephone. J.B. explained that she is a registered nurse and works three days a week, usually on weekends when E.R.A is with C.A. According to J.B., it would not be in E.R.A.'s best interest for the court to designate C.A. as the conservator with the right to designate E.R.A.'s residence, because it would be detrimental for E.R.A. to have a drastic change of her residence and schedule.

J.B. testified that, other than the current lawsuit, she and C.A. have a "pretty good relationship[]" and have not had much difficultly parenting E.R.A. J.B. further testified that E.R.A. is doing very well and enjoys her new school and extracurricular activities, and it would be in E.R.A.'s best interest for her to have the right to designate E.R.A.'s residence. J.B. testified that she has not noticed any persistent changes in E.R.A.'s demeanor, but she believes that E.R.A. is less well-behaved

7

during readjustment periods. K.W. also testified that she has not noticed any change in E.R.A.'s behavior, and she has a good relationship with E.R.A.

After J.B. testified, C.A.'s counsel called Debra Santos as an impeachment witness, and J.B.'s counsel objected, arguing that Santos was not listed as a person with relevant knowledge. After C.A.'s counsel admitted that he had known about Santos's impeachment testimony for a few weeks and had failed to file a motion for leave to disclose her late, the trial court sustained the objection.

The trial court denied C.A.'s petition to modify the parent-child relationship in its entirety and granted J.B.'s counter-petition. The trial court appointed C.A. and J.B. as joint managing conservators of E.R.A. and ordered that J.B. had the exclusive right to designate E.R.A.'s primary residence within Harris County, Texas. In its findings of fact, the trial court found that there had "been a material and substantial change in the circumstances of the child and both conservators since the date of the divorce, and modification of the divorce decree would be in the best interest of the child." The trial court found that since the divorce, J.B. had been E.R.A.'s primary caregiver, and that J.B. can provide a more stable home for E.R.A. and would "best provide for the child's physical, psychological[,] and emotional needs and development, now and in the future." The trial court further found that it was in the best interest of the child that J.B. be named as the conservator having the exclusive

right to designate the child's primary residence. The trial court also found that the rights and duties awarded to each parent were in E.R.A.'s best interest.

## ANALYSIS

In issue one, C.A. argues that the trial court abused its discretion by giving J.B. the exclusive right to determine the primary residence of E.R.A., because the evidence is legally and factually insufficient. We review a trial court's decision in a case concerning a modification of conservatorship under an abuse of discretion standard. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *In the Interest of M.A.M*, 346 S.W.3d 10, 13 (Tex. App.—Dallas 2011, pet. denied). "The trial court is given wide latitude in determining the best interests of a minor child." *Gillespie*, 644 S.W.2d at 451. A trial court abuses its discretion when it acts arbitrarily or without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985); *In the Interest of M.A.M*, 346 S.W.3d at 13. "The question of conservatorship of a child is left to the sound discretion of the trial court when it sits as trier of fact." *Echols v. Olivarez*, 85 S.W.3d 475, 477 (Tex. App.—Austin 2002, no pet.). Because the trial court is in the best position to observe the demeanor of the witnesses and can "'feel' the forces, powers, and influences that cannot be discerned merely by reading the record[,]" we will not find an abuse of discretion as long as there is some evidence of substantive and probative character to support the trial court's decision. *Id.*

In family law cases, the traditional sufficiency standard of review overlaps with the abuse of discretion standard; thus, legal and factual sufficiency are not independent grounds of error but are relevant factors in assessing whether the trial court had sufficient evidence to exercise its discretion. *In the Interest of M.A.M*, 346 S.W.3d at 13. "This standard has been distilled into a two-pronged inquiry: (1) whether the trial court had sufficient information upon which to exercise its discretion; and (2) whether the trial court erred in its application of discretion." *Id.* at 14. The traditional sufficiency review is relevant with regard to determining whether the trial court had sufficient evidence to exercise its discretion. *Id.*; *In the Interest of A.B.P.*, 291 S.W.3d 91, 95 (Tex. App.—Dallas 2009, pet. denied). The second part of the inquiry requires that we determine whether the trial court made a reasonable decision considering the evidence presented. *In the Interest of M.M.M.*, 307 S.W.3d 846, 849 (Tex. App.—Fort Worth 2010, no pet.).

The child's best interest is the trial court's primary concern in determining issues of conservatorship, possession, and access. Tex. Fam. Code Ann. § 153.002. We assess the trial court's best-interest finding by using the *Holley* factors. *See Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). The *Holley* factors include (1) the child's desires; (2) the child's current and future physical and emotional needs; (3) any physical or emotional danger to the child now or in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to

those individuals to promote the child's best interest; (6) the plans for the child by these individuals; (7) the stability of the home; (8) acts or omissions by a parent tending to show that the existing parent-child relationship is not a proper one; and (9) any excuse for the parent's acts or omissions. *Id.*

The trial court heard conflicting evidence regarding the *Holley* factors with respect to conservatorship, possession, and access. *See Holley*, 544 S.W.2d at 371-72. After hearing all the evidence and observing the witnesses, the trial court found that it was in E.R.A.'s best interest that C.A. and J.B. remain as joint managing conservators and that J.B. have the exclusive right to designate the child's residence. Based on the evidence concerning all relevant factors at the time of the hearing, we conclude that some evidence of substantive and probative character supports the trial court's decision. *See Echols*, 85 S.W.3d at 477. We further conclude that the trial court made a reasonable decision considering the evidence presented. *See In the Interest of M.M.M.*, 307 S.W.3d at 849. Accordingly, we conclude that the trial court did not abuse its discretion by ordering the modification. *See Gillespie*, 644 S.W.2d at 451. We overrule issue one.

In issue two, C.A. complains the trial court erred by not allowing the testimony of Santos as a rebuttal witness. We review the trial court's decision to admit or exclude evidence for abuse of discretion. *In the Interest of J.P.B.*, 180 S.W.3d 570, 575 (Tex. 2005).

11

A party may obtain discovery of the name of persons who have knowledge of relevant facts when those persons have or may have knowledge of any discoverable matter. Tex. R. Civ. P. 192.3(c). A party may also obtain discovery of the name of any person who is expected to testify at trial, excluding rebuttal or impeaching witnesses, the necessity of whose testimony cannot reasonably be anticipated before trial. Tex. R. Civ. P. 192.3(d). A party who fails to timely make, amend, or supplement a discovery response may not offer testimony of a non-party witness who was not timely identified unless the court finds that (1) there was good cause for the failure to timely disclose or (2) the failure will not surprise or prejudice the other party. *In the Interest of A.C.*, No. 02-18-00129-CV, 2018 WL 5273931, at *9 (Tex. App.—Fort Worth Oct. 24, 2018, pet. denied) (mem. op.) (citing Tex. R. Civ. P. 193.6(a)). The burden of establishing good cause or the lack of surprise or unfair prejudice is on the party seeking to call the witness. Tex. R. Civ. P. 193.6(b).

In his brief, C.A. argues that Santos's testimony was material to the determination of the child's best interest. As discussed above, the record reflects C.A. did not identify Santos in disclosures or interrogatories, and C.A.'s counsel admitted that despite knowing about Santos's impeachment evidence for a few weeks before trial, he failed to file a motion for leave to disclose her late. Because the record shows that C.A. knew about the necessity of obtaining Santos's testimony before trial and did not meet his burden of establishing good cause for his failure to

timely disclose, we conclude that the trial court did not err by excluding the testimony. *See* Tex. R. Civ. P. 192.3(d), 193.6(a), (b); *In the Interest of A.C.*, 2018 WL 5273931, at \*9. Furthermore, we have already concluded that there is some evidence of substantive and probative character to support the trial court's decision to appoint J.B. as the conservator with the exclusive right to designate the child's residence. *See Echols*, 85 S.W.3d at 477. Therefore, even if the trial court had erred, C.A. did not demonstrate that the trial court's exclusion of Santos's testimony resulted in the rendition of an improper judgment. *See* Tex. R. App. P. 44.1(a)(1). We overrule issue two. Having overruled each of C.A.'s issues, we affirm the trial court's judgment.

     AFFIRMED.

_____
W. SCOTT GOLEMON
Chief Justice

Submitted on February 17, 2021
Opinion Delivered March 18, 2021

Before Golemon, C.J., Kreger and Johnson, JJ.