**Reversed, Remanded, and Opinion Filed July 15, 2022**



In The

# Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-20-00966-CV

## IN THE INTEREST OF A.V., A CHILD

**On Appeal from the 469th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 469-50370-2020**

## MEMORANDUM OPINION

Before Chief Justice Burns, Justice Schenck, and Justice Partida-Kipness
Opinion by Justice Partida-Kipness

This appeal involves a final order in an original suit affecting the parent-child relationship (SAPCR) in which the trial court appointed the child's maternal grandparents[1] sole managing conservators and appointed the child's mother a possessory conservator. Mother appeals the SAPCR order and maintains she should have been named the child's sole managing conservator. After reviewing the briefs and the record, we conclude the trial court abused its discretion. We reverse the SAPCR order and remand for further proceedings consistent with this opinion.

---

[1] To protect the identity of the child, we refer to her as A.V. *See* TEX. R. APP. P. 9.8(b)(2). We will refer to A.V.'s mother as "Mother," her grandparents collectively as "Grandparents" and individually as "Grandmother" or "Grandfather," and other family members with corresponding aliases. *See id.*

# BACKGROUND

Mother gave birth to A.V. in January 2016, when Mother was eighteen years old. She and A.V. lived with Grandparents until A.V. was six months old. Mother then moved into an apartment. Mother testified that A.V. moved with her, but Grandmother testified that A.V. continued to live with Grandparents. Regardless, Mother and Grandparents agree they planned for A.V. to live with Mother in the future. According to Grandmother, they agreed that Mother would take the baby "once she got set up," and Grandparents would still help Mother by picking the baby up from day care "and that kind of stuff, but the baby was going to live with her eventually."

A.V. continued to live with Grandparents during the following three and a half years. Mother also lived with them at times. The evidence does not show specific dates during which Mother lived with Grandparents and A.V. between July 2016, and September 2019. The record does show, however, that Mother lived at Grandparents' home either exclusively or for extended periods between September 2019, and January 9, 2020. Grandmother testified that Mother lived with her and her husband "for a short time" before they filed the SAPCR petition on January 21, 2020. She did not testify as to what specific dates Mother lived with them prior to filing the petition. But the parties agree that Mother moved out following an argument with Grandmother on January 9, 2020, which was twelve days before Grandparents filed the SAPCR petition. Other evidence indicates Mother lived with Grandparents for a

few months before the January 9, 2020 argument. For example, Mother testified that her relationship with her parents had become "toxic" and had "ended" months before the argument, but she remained in their home and "tried to stick it out because I felt like I had nowhere to go." Text messages presented by Grandparents at trial show Mother was living with Grandparents in September 2019, four months before Grandparents filed the SAPCR petition. Further, in her affidavit in support of the SAPCR petition, Grandmother describes incidents that occurred at their home in November 2019, and December 2019, when Mother was living with A.V. and Grandparents.

In January 2020, Mill Creek Residential hired Mother to work as an assistant property manager at one of the company's properties in Seattle, Washington. The job paid Mother $50,000 annually plus a fifty percent discount on rent at the property. Mother testified that she planned to move to Seattle with A.V. so her daughter "could experience stability" with Mother and to get away from the "toxic environment" Mother experienced living with Grandparents. On January 9, 2020, Mother told Grandmother about the Seattle job and her plans to move there with A.V. The women argued. Mother recorded the argument. The recordings capture both women yelling angrily at each, Mother accusing Grandmother of hitting her, and Mother telling Grandmother to stop touching her. Mother testified that the argument became physical. According to Mother, Grandmother slapped her, pushed her on the bed, and pinned her down. Grandmother denies hitting Mother and

maintains that the "slapping and hitting sounds" heard on the recording are her trying to get her phone back from Mother. Mother moved out of the house following the argument.

Grandparents filed their original SAPCR petition on January 21, 2020. They cited Mother's plans to move to Seattle with A.V. as a basis for obtaining a temporary restraining order. Grandmother asserted in an affidavit that Mother "has never taken care of [A.V.]," and claimed that Mother "is very unstable, impulsive and reckless," and "very emotional, volatile, and has a drinking problem." The trial judge signed a temporary restraining order on January 22, 2020, which excluded Mother from possession of or access to A.V. Mother began her new job in Seattle on January 31, 2020. Within weeks, lockdowns began related to the Covid-19 pandemic. This prevented Mother from travelling to Dallas to see A.V. Mother moved back to Dallas April 21, 2020, after her employer agreed to transfer Mother so she could be closer to A.V.

A bench trial was held on June 22, 2020. At that time, Mother was still employed by Mill Creek Residential as an assistant property manager at a residential property in the Lakewood area of Dallas. Mother initially lived at the Dallas property when she moved back to Dallas in April 2020. But by the time of trial, Mother and her fiancée had signed a one-year lease on a house in McKinney, Texas and moved in to the house. Mother testified that she decided to live in McKinney rather than stay in the Dallas apartment because McKinney was close to A.V. and she did not

want A.V. to have to change schools to live with Mother. Mother further testified that her manager wanted to promote her to property manager, and Mother believes she has a future with that employer.

At trial, Grandparents told the trial court that they each believe it is in A.V.'s best interest for Grandparents to be her sole managing conservators and for Mother to pay them child support. Grandmother testified that she had two concerns about A.V. living with Mother. First, she did not want A.V. to live with Mother and her fiancée because the fiancée is "a stranger" to A.V. and Grandparents, and Mother had only known her fiancée since February 2020. Grandmother's second concern was that she did not know if Mother's job will last. Grandfather testified that he did not think Mother "is responsible enough" to have a child on a full-time basis. He based this assessment on prior incidents where Mother chose to go out with friends rather than visit A.V., said she did not want to be a mother, and spent time on her phone during visits with A.V. He also expressed concern that Mother's current romantic relationship would not last because her prior relationships intensified quickly and then ended within three to six months. Grandfather testified that two of Mother's prior relationships ended after the romantic partner physically assaulted Mother.

At the conclusion of the bench trial on Grandparents' SAPCR petition, the trial court took the matter under advisement. On July 1, 2020, the trial court issued a "Court's Memorandum" setting out its general rulings. Mother filed a motion for

reconsideration, which the trial court denied on October 2, 2020. The trial court signed its Final Order in the SAPCR on October 9, 2020. The Final Order appoints Grandparents the sole managing conservators of A.V., and Mother a possessory conservator of A.V. and found those appointments to be in A.V.'s best interest. The court stated its finding that Mother "voluntarily relinquished actual care, control, and possession of the child" to Grandparents "for a period of one year or more, a potion [sic] of which was within 90 days preceding the date of filing" the SAPCR petition. The trial court ordered that Mother's visits with A.V. be supervised based on the court's finding "that credible evidence has been presented that there is a history or pattern of child neglect committed by" Mother. The trial court also ordered Mother to pay Grandparents child support, set out a possession schedule, and made other orders not at issue here.

Mother requested findings of fact and conclusions of law, which the trial court issued on November 17, 2020. The findings and conclusions relevant to the issues raised on appeal include the following:

- Mother "voluntarily relinquished all control and care of" A.V. to Grandparents.

- Mother's "actions have shown she is incapable of providing a safe and stable environment for the child."

- Mother's past romantic relationships with six partners "involved violence or ended in violence."

- "[O]ver the course of the child's life [Mother] has neglected the child."

- Appointing Mother as managing conservator "would not be in the child's best interest because the appointment would significantly impair the child's physical health or emotional development."

- Mother "has voluntarily relinquished actual care, control and possession of the child to [Grandparents] for a period in excess of one year and the appointment of [Grandparents] is in the best interest of the child."

- Mother "has not acted in the best interest of the child and [Grandparents] have overcome the presumption that [Mother] is a fit parent that has acted in the best interest of the child. *Troxel v. Granville*, 530 U.S. 57, 120 S.Ct. 2054, 147 L. Ed. 2d 49 (2000)."

Mother timely appealed the SAPCR order. On appeal, Mother contends the trial court abused its discretion by appointing Grandparents joint managing conservators and entering a possession schedule that deviates from the standard possession order. She maintains the evidence was insufficient to support the trial court's determination that Grandparents overcame the constitutional fit-parent presumption and statutory parental presumption, and challenges the corresponding findings of fact and conclusions of law.

## STANDARD OF REVIEW

We review a trial court's conservatorship determination for abuse of discretion. *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007). We may reverse the trial court's ruling only if it is arbitrary and unreasonable. *Id.* Legal and factual sufficiency are not independent grounds of error in conservatorship cases but are relevant factors in determining whether an abuse of discretion occurred. *In re J.R.*,

No. 05-19-00904-CV, 2020 WL 219315, at *3 (Tex. App.—Dallas Jan. 15, 2020, no pet.) (mem. op.); *In re L.W.*, No. 02-16-00091-CV, 2016 WL 3960600, at *2 (Tex. App.—Fort Worth Jul. 21, 2016, no pet.) (mem. op.). To determine whether the trial court abused its discretion because the evidence was insufficient to support its decision, we consider whether the trial court (1) had sufficient evidence upon which to exercise its discretion and (2) erred in its exercise of that discretion. *In re J.R.*, 2020 WL 219315, at *3. We conduct the applicable sufficiency review with regard to the first question. *Id.* We then determine whether, based on the elicited evidence, the trial court made a reasonable decision. *Id.* The trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *In re M.A.M.*, 346 S.W.3d 10, 14 (Tex. App.—Dallas 2011, pet. denied).

Trial court findings concerning conservatorship are reviewed under a preponderance-of-the-evidence standard. *See In re J.A.J.*, 243 S.W.3d at 616 ( "[A] finding that appointment of a parent as managing conservator would significantly impair the child's physical health or emotional development is governed by a preponderance-of-the-evidence standard."). The heightened standards of proof and review for termination decisions do not apply. *Id.* Instead, conservatorship determinations "are subject to review only for abuse of discretion, and may be reversed only if the decision is arbitrary and unreasonable." *Id.*; *In re A.M.*, No. 05-19-00412-CV, 2019 WL 4071998, at *3 (Tex. App.—Dallas Aug. 29, 2019, no pet.)

(mem. op.); *In re L.W.*, No. 02-16-00091-CV, 2016 WL 3960600, at *1 (Tex. App.—Fort Worth Jul. 21, 2016, no pet.) (mem. op.).

## APPLICABLE LAW

The United States Supreme Court has long held that the Constitution "protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *In re C.J.C.*, 603 S.W.3d 804, 811 (Tex. 2020) (quoting *Troxel v. Granville*, 530 U.S. 57, 66, 120 S.Ct. 2054, 147 L. Ed. 2d 49 (2000) (plurality opinion)). To protect that right, a plurality in *Troxel* applied "a presumption that fit parents act in the best interest of their children." *Troxel*, 530 U.S. at 68. This "fit parent" presumption was formally recognized by the Supreme Court of Texas in 2020. *In re C.J.C.*, 603 S.W.3d at 807.

The Texas Supreme Court has similarly recognized that "[t]he presumption that the best interest of the child is served by awarding custody to [a] parent is deeply embedded in Texas law." *In re V.L.K.*, 24 S.W.3d 338, 341 (Tex. 2000) (citing *Lewelling v. Lewelling*, 796 S.W.2d 164, 166 (Tex. 1990)); *In re A.M.*, 643 S.W.3d 226, 227 (Tex. App.—Dallas 2022, no pet.). The government may not "infringe on the fundamental right of parents to make child rearing decisions simply because a state judge believes a 'better decision' could be made." *In re Derzapf*, 219 S.W.3d 327, 333 (Tex. 2007) (per curiam) (quoting *Troxel*, 530 U.S. at 72–73, 120 S.Ct. 2054).

In order to avoid an unconstitutional application of the family code as to grandparents, a court must require a grandparent to "overcome the presumption that a fit parent acts in the best interest of his or her child." *In re Pensom*, 126 S.W.3d 251, 256 (Tex. App.—San Antonio 2003, no pet.). To overcome the fit-parent presumption, "a grandparent has the burden to prove, by a preponderance of the evidence, either that the parent is not fit, or that denial of access by the grandparent would significantly impair the child's physical health or emotional well-being." *Id.* at 256. "[S]o long as a parent adequately cares for his or her children (i.e., is fit), there will normally be no reason for the State to inject itself into the private realm of the family." *In re Mays–Hooper*, 189 S.W.3d 777, 778 (Tex. 2006) (quoting *Troxel*, 530 U.S. at 68, 120 S.Ct. 2054); *see also Troxel*, 530 U.S. at 72–73, 120 S.Ct. 2054 (noting that the constitution "does not permit a State to infringe on the fundamental right of parents to make child rearing decisions simply because a state judge believes a 'better decision' could be made").

Texas also has a statutory parental presumption running parallel to the fit-parent presumption. Section 153.131 of the Texas Family Code requires that a child's parent "be appointed sole managing conservator" or both parents appointed joint managing conservators in initial child custody suits unless the appointment "would significantly impair the child's physical health or emotional development." TEX. FAM. CODE § 153.131(a); *In re C.J.C.*, 603 S.W.3d at 807 (noting statutory parental presumption is parallel to the constitutional fit parent presumption). The

family code, thus, presumes that the appointment of "the parents of a child" as joint managing conservators is in the child's best interest. *Critz v. Critz*, 297 S.W.3d 464, 470 (Tex. App.—Fort Worth 2009, no pet.). To overcome this presumption, a court must find that (1) appointing the parents would significantly impair the child's physical health or emotional development, (2) the parents have exhibited a history of family violence, or (3) the parents voluntarily relinquished care, control, and possession of the child to a non-parent for a year or more. *Id*.; *see* TEX. FAM. CODE § 153.131.

## ANALYSIS

In three issues, Mother contends the trial court abused its discretion by (1) determining that Grandparents rebutted the constitutional fit-parent presumption set out in *Troxel* and *CJC*, (2) concluding that Grandparents rebutted the statutory parental presumption contained in section 153.131 of the family code, and (3) awarding Mother less than the standard possession order and requiring possession be supervised. We address each issue in turn.

## I. Constitutional fit parent presumption under *Troxel* and *CJC*

In her first issue, Mother argues the trial court abused its discretion by awarding Grandparents possession and conservatorship rights because they did not overcome the presumption that a fit parent acts in a child's best interest. We agree.

The Texas Supreme Court's decision in *C.J.C.* forecloses consideration of Grandparents as managing conservators over a fit parent's objection unless

–11–

Grandparents overcome the presumption that Mother, as a fit parent, acts in A.V.'s best interest. *See C.J.C.*, 603 S.W.3d at 820 ("When a nonparent requests conservatorship or possession of a child, the child's best interest is embedded with the presumption that it is the fit parent—not a court—who makes the determination whether to allow that request."). To overcome the fit-parent presumption, Grandparents had "the burden to prove, by a preponderance of the evidence, either that the parent is not fit, or that denial of access by the grandparent would significantly impair the child's physical health or emotional well-being." *In re Pensom*, 126 S.W.3d at 256. Here, Mother did not seek to deny Grandparents access to A.V. Rather, she objected to Grandparents being named sole managing conservators. Grandparents were, therefore, required to prove by a preponderance of the evidence that Mother was an unfit parent. *See id.*

The fit-parent presumption recognized in *C.J.C.* "means that parents enjoy a presumption that they are fit and able to make decisions regarding their children unfettered by government intrusion." *In re C.D.C.*, No. 05-20-00983-CV, 2021 WL 346428, at *1 (Tex. App.—Dallas Feb. 2, 2021, no pet.) (mem. op.). *In re C.J.C.* "does not provide guidance on the quantum of evidence necessary to overcome the presumption." *Id.* at *2. However, "so long as a parent adequately cares for his or her children (i.e., is fit), there will normally be no reason for the State to inject itself into the private realm of the family." *See In re Mays–Hooper*, 189 S.W.3d at 778; *In re B.A.B.*, No. 07-21-00259-CV, 2022 WL 1687122, at *5 (Tex. App.—Amarillo

May 26, 2022, no pet. h.) (mem. op.) ("the trial court cannot supplant Father's fundamental rights to make child rearing decisions for [the child] simply because the court believes the Rosses would be a better choice. Instead, the Rosses were required to present sufficient evidence to overcome the presumption that Father is a fit parent."). To prove Mother unfit here, Grandparents had the burden to prove that Mother cannot adequately care for A.V. *See In re Mays–Hooper*, 189 S.W.3d at 778. *see also Troxel*, 530 U.S. at 72–73 (noting that the constitution "does not permit a State to infringe on the fundamental right of parents to make child rearing decisions simply because a state judge believes a 'better decision' could be made"). We conclude the record shows they failed to meet that burden of proof.

In its conclusions of law, the trial court concluded that Mother "has not acted in the best interest of the child and [Grandparents] have overcome the presumption that [Mother] is a fit parent that has acted in the best interest of the child. *Troxel v. Granville*, 530 U.S. 57, 120 S.Ct. 2054, 147 L. Ed. 2d 49 (2000)." The trial court made no findings, however, that Mother cannot adequately care for A.V. and, as a result, is an unfit parent. Indeed, Grandparents did not contend in the trial court that Mother is unfit. Rather, Grandparents' evidence focused on their consistent presence in A.V.'s life as her primary caregivers and their concerns that neither Mother's employment nor romantic partnership with her fiancée would last. They presented no evidence, however, to contradict Mother's testimony that her job and her relationship with her fiancée were both stable and thriving. The only evidence

presented on those issues showed that, at the time of trial, Mother was able to adequately care for A.V. Mother had a steady job with a substantial income at which she was up for a promotion, was engaged to be married, and was living in a three bedroom and two bath house under a one-year lease with her fiancée who was also gainfully employed. Moreover, in the months leading up to the underlying litigation, Mother was living with Grandparents and A.V., obtained the job in Seattle, and consistently told Grandparents that she wanted to care for A.V. on her own in Seattle. Although Mother permitted Grandparents to care for A.V. for most of the child's life, we cannot conclude that doing so makes Mother an unfit parent. Her past actions, standing alone, cannot support a finding that Mother was unfit at the time of trial. *Critz*, 297 S.W.3d at 475 ("If the parent is presently a suitable person to have custody, the fact that there was a time in the past when the parent would not have been a proper person to have such custody is not controlling."); *In re S.T.*, 508 S.W.3d 482, 492 (Tex. App.—Fort Worth 2015, no pet.) (the relevant time period is the present).

Further, by relying on Grandparents' help before she was financially and emotionally able to fully care for A.V. on her own, Mother ensured A.V. was adequately cared for and, in doing so, acted in the child's best interest. Under this record, we conclude Grandparents failed to meet their burden to prove Mother is an unfit parent. The trial court, therefore, abused its discretion by concluding

–14–

Grandparents had overcome the constitutional fit-parent presumption set out in *Troxel* and *C.J.C.* We sustain Mother's first issue.

## II. Statutory parental presumption

Next, Mother asserts the trial court abused its discretion by concluding that Grandparents rebutted the family code's statutory parental presumption. TEX. FAM. CODE § 153.131(b). We agree.

Section 153.131 of the family code sets out a rebuttable presumption that it is in the best interest of the child for the parents of the child to be appointed as joint managing conservators. TEX. FAM. CODE § 153.131(b). In light of this presumption, a parent shall be appointed sole managing conservator or both parents shall be appointed as joint managing conservators "unless the court finds that appointment of the parent or parents would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development . . . " TEX. FAM. CODE § 153.131(a).

Once evidence contradicting the presumption is offered, however, the presumption disappears and has no effect on the burden of persuasion. *Choyce v. Dallas Cty. Child Welfare Unit*, 642 S.W.2d 559, 561 (Tex. App.—Dallas 1982, no writ). When determining conservatorship, the trial judge should focus on the child. *In re Rodriguez*, 940 S.W.2d 265, 270–71 (Tex. App.—San Antonio 1997, writ denied). In contrast, the focus in a termination case is on the behavior of the parents. *Id.* A trial court's conclusion that the statutory parental presumption has been

rebutted must be supported by specific factual findings identifying the factual basis for the finding, and the failure to make such findings constitutes error. *Critz*, 297 S.W.3d at 470.

One way for a nonparent to overcome the statutory parental presumption is by proving by a preponderance of the evidence that appointment of the parent as managing conservator would significantly impair the child's physical health or emotional development. *In re L.E.M.*, No. 05-16-00209-CV, 2017 WL 3474012, at *1 (Tex. App.—Dallas Aug. 14, 2017, no pet.) (mem. op.) (citing *In re B.B.M.*, 291 S.W.3d 463, 467 (Tex. App.–Dallas 2009, no pet.)). The burden is on the nonparent to produce some evidence that the child's placement with the parent would significantly impair the child's physical or emotional development. *Mankin v. Ledezma de la Rosa*, No. 05-96-01197-CV, 1999 WL 26898, at *2–3 (Tex. App.—Dallas Jan. 25, 1999, no pet.) (mem. op.) (citing *In re Rodriguez*, 940 S.W.2d at 272).

To support a finding of significant impairment, the evidence must do more than merely raise a suspicion or speculation of possible harm. *In re B.B.M.*, 291 S.W.3d at 467. Instead, the evidence must support the logical inference that some specific, identifiable behavior or conduct of the parent, demonstrated by specific acts or omissions, will probably harm the child. *Id.*; *R.H. v. D.A.*, No. 03-16-00442-CV, 2017 WL 875317, at *5 (Tex. App.—Austin Mar. 2, 2017, pet. dism'd) (mem. op.). This is a heavy burden that is not satisfied by merely showing the nonparent would

be a better choice as custodian of the child. *In re B.B.M.*, 291 S.W.3d at 467. Acts or omissions that constitute significant impairment include, but are not limited to, physical abuse, severe neglect, abandonment, drug or alcohol abuse, or immoral behavior by the parent. *Id.* at 469. A factfinder may infer the present fitness of the parent to be managing conservator from the parent's recent, deliberate past misconduct. *R.H.*, 2017 WL 875317, at *5. But evidence of past misconduct, standing alone, may not be sufficient to show present unfitness. *Id.* "When a nonparent and a parent are both seeking managing conservatorship, the 'close calls' go to the parent." *In re B.B.M.*, 291 S.W.3d at 469; *see also In re F.E.N.*, 579 S.W.3d 74, 77 (Tex. 2019) (per curiam) (proof of significant impairment "should include the acts or omissions of the parent demonstrating that result") (citing *Lewelling*, 796 S.W.2d at 167).

Here, the trial court found that Mother "neglected" A.V. "over the course of the child's life" and concluded appointing Mother as managing conservator "would significantly impair the child's physical health or emotional development." The trial court did not, however, find any specific or identifiable behavior or conduct of Mother or identify any specific acts or omissions by Mother that would support a logical inference that Mother's appointment would significantly impair A.V.'s physical health or emotional development. We have found no evidence in the record to support such an inference. Indeed, there is no evidence that Mother ever physically or emotionally abused A.V., or that any specific actions or omissions by Mother

–17–

would pose any harm to A.V. At most, the evidence showed that the Grandparents would be a good choice to act as A.V.'s custodians. That, however, is insufficient as a matter of law to overcome the statutory parental presumption. *See In re B.B.M.*, 291 S.W.3d at 467. Under this record, we conclude the evidence was legally insufficient to support the trial court's finding of significant impairment.

The evidence was also legally insufficient to support the trial court's finding of neglect. Section 261.001(4) of the family code defines "neglect" as:

> an act or failure to act by a person responsible for a child's care, custody, or welfare evidencing the person's blatant disregard for the consequences of the act or failure to act that results in harm to the child or that creates an immediate danger to the child's physical health or safety . . . .

TEX. FAM. CODE § 261.001(4)[2]. There is no evidence in this record to support the trial court's finding of neglect. The record includes no evidence that A.V. was ever harmed by Mother's blatant disregard for the consequences of her acts or failures to act, nor is there any evidence that Mother ever placed A.V.'s physical health or safety in immediate danger. On the contrary, the record established that A.V. has been adequately cared for throughout her life and has not been placed in harm's way by Grandparents or Mother. The finding of neglect is, therefore, not supported by legally sufficient evidence.

---

[2] Section 261.001(4) goes on to describe what acts and omissions are included in the definition of "neglect," none of which are applicable or present here.

A nonparent can also rebut the statutory parental presumption by proving the parents have exhibited a history of family violence, or voluntarily relinquished care, control, and possession of the child to a nonparent for a year or more. *Critz*, 297 S.W.3d at 470; *see* TEX. FAM. CODE §§ 153.131, 153.373. No family violence allegations or findings are present here. The trial court did, however, find voluntary relinquishment. Grandparents maintain they overcame the section 153.131 parental presumption by proving Mother voluntarily relinquished A.V. to them as set out in section 153.373 of the family code, which provides:

> The presumption that a parent should be appointed or retained as managing conservator of the child is rebutted if the court finds that:
>
> > (1) the parent has voluntarily relinquished actual care, control, and possession of the child to a nonparent, a licensed child-placing agency, or the Department of Family and Protective Services for a period of one year or more, a portion of which was within 90 days preceding the date of intervention in or filing of the suit; and
> >
> > (2) the appointment of the nonparent, agency, or Department of Family and Protective Services as managing conservator is in the best interest of the child.

TEX. FAM. CODE § 153.373. The evidence, however, is insufficient to support the trial court's finding that Mother voluntarily relinquished A.V. to Grandparents.

Although the evidence showed that A.V. lived at Grandparents' home throughout her life, the record also shows that Mother lived with A.V. and Grandparents at various times and assisted in caring for A.V. during those periods. The record also shows that Mother maintained contact with A.V. through in-person

visits and FaceTime calls when she was not living with A.V. Although Grandparents assert Mother should have spent more time caring for A.V., they failed to present any evidence that Mother voluntarily relinquished actual possession of A.V. for a period of one year or more. Indeed, the parties agree that Mother hoped to one day raise A.V. on her own without Grandparents' help.

Moreover, the evidence showed that Mother lived with A.V. and Grandparents for at least four months before Grandparents filed their SAPCR petition. Grandparents presented no evidence regarding Mother's actions to care for A.V. when Mother lived with them during that time. And Mother testified that in the year before trial, she had no intention of relinquishing the care, control, or possession of A.V. to Grandparents. This is supported by the timing of Grandparents' SAPCR filing. It was not until Mother found the Seattle job and announced her intention to move there with A.V. that Grandparents sued for custody. The evidence, therefore, established that no relinquishment occurred within the ninety days preceding Grandparents' filing the SAPCR petition.

We conclude that the evidence presented at trial was insufficient to overcome "[t]he strong presumption that the best interest of a child is served by appointing a natural parent as managing conservator." *See In re B.B.M.*, 291 S.W.3d at 467. There was no evidence that Mother's "specific, identifiable behavior or conduct," "demonstrated by specific acts or omissions," will probably harm A.V. *See id.* At most, the evidence "merely raise[d] a suspicion or speculation of possible harm."

–20–

*See id.* Similarly, there was no evidence to support the findings of neglect and voluntary relinquishment. Consequently, the trial court lacked sufficient evidence on which to exercise its discretion. *See In re M.O.*, No. 05-19-00413-CV, 2019 WL 4071999, at *3 (Tex. App.—Dallas Aug. 29, 2019, no pet.) (mem. op.). We sustain Mother's second issue.

### III.  Standard possession order

Finally, Mother maintains the trial court abused its discretion by ordering that her possession and access of A.V. be supervised and permitting her less possession time than what is allotted in the Standard Possession Order. *See* TEX. FAM. CODE § 153.252 (creating a rebuttable presumption that the standard possession order "provides reasonable minimum possession of a child for a parent names as a possessory conservator . . . and is in the best interest of the child."). We agree.

The trial court must begin with a rebuttable presumption that the standard possession order is in the best interest of the child. TEX. FAM. CODE § 153.252. If the presumption is rebutted and the trial court denies possession or imposes restrictions or limitations on the parent's possession and access rights, the terms of an order "may not exceed those that are required to protect the best interest of the child." TEX. FAM. CODE § 153.193; *In re C.A.M.M.,* 243 S.W.3d 211, 222 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). Here, the trial court deviated from the standard possession order based on its finding that "there is a history or pattern of child neglect committed by" Mother. As discussed above, however, the evidence

was insufficient to support the trial court's neglect findings. As such, there is insufficient evidence to rebut the presumption that the standard possession order is in A.V.'s best interest. On this record, and in light of the statutory presumption, we conclude that the trial court abused its discretion by ordering Mother's visitation be supervised and by ordering a more restrictive possession and access schedule than permitted by the standard possession order. Moreover, at the time of trial, the relationship between Mother and Grandmother had deteriorated to the point that the women engaged in an emotionally-charged argument before Mother moved to Seattle, and Mother felt too uncomfortable to visit A.V. in the weeks leading up to trial. We conclude, therefore, that requiring visitation to be supervised by Grandparents at their home was not in A.V.'s best interest at the time of trial. We sustain Mother's third issue.

## IV.     Remand for further proceedings

Mother asks the Court to reverse the SAPCR order and render an order naming Mother sole managing conservator. We overrule that request because we find it to be in the interest of justice not to simply render judgment in her favor. More than two years have passed since the custodial hearing, and we have no ability to determine the present circumstances of any of the parties. Nor do we have the luxury of sitting as a fact-finder. Circumstances may have changed during this time such that it would not be in A.V.'s best interest to appoint Mother as her sole managing conservator. *See, e.g., Shook v. Gray*, 381 S.W.3d 540, 542 (Tex. 2012) (remanding

in the interest of justice). Moreover, Grandparents' failure to overcome the fit-parent presumption and the statutory parental presumption does not deprive them of standing to be considered for conservatorship or access. *Id.*; TEX. FAM. CODE § 102.003 (authorizing suit by "a person, other than a foster parent, who has had actual care, control, and possession of the child for at least six months ending not more than 90 days preceding the date of the filing of the petition"). If Grandparents fail to overcome those presumptions on remand, the trial court may still name Grandparents as possessory conservators or grant them access if that would be in A.V.'s best interest. *Shook*, 381 S.W.3d at 543.

## CONCLUSION

Under this record, we conclude the trial court abused its discretion by appointing Grandparents joint managing conservators of A.V. and by deviating from the family code's standard possession order. Accordingly, we sustain Mother's appellate issues, reverse the October 9, 2020 "Final Order in Suit Affecting the Parent-Child Relationship" in its entirety, and remand for further proceedings consistent with this opinion.

/Robbie Partida-Kipness/
ROBBIE PARTIDA-KIPNESS
JUSTICE

200966F.P05

–23–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF A.V., A
CHILD,

No. 05-20-00966-CV

On Appeal from the 469th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 469-50370-
2020.
Opinion delivered by Justice Partida-
Kipness. Chief Justice Burns and
Justice Schenck participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and this cause is **REMANDED** to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that appellant ELIZABETH RENEE VARGAS recover her costs of this appeal from appellees LISA VARGAS and RAUL VARGAS.

Judgment entered this 15th day of July 2022.